UNITED STATES of America, Appellee,

v.

SANCHEZ, et al., Defendants.

**Appeal of Hilario MOYA, Defendant.**

**No. 1113, Docket 89–1553.**

United States Court of Appeals, Second Circuit.

Argued April 17, 1990.

Decided Aug. 15, 1990.

Irving Cohen, New York City, for defendant-appellant.

Kenneth J. Vianale, Asst. U.S. Atty. New York City (Otto G. Obermaier, U.S. Atty. for S.D.N.Y., Helen Gredd, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before MESKILL, CARDAMONE and PIERCE, Circuit Judges.

PIERCE, Senior Circuit Judge:

Hilario Moya appeals from a judgment of the United States District Court for the Southern District of New York, Lowe, *Judge*, convicting him, after a jury trial, of two counts: conspiracy to distribute cocaine and possession with intent to distribute cocaine.

On appeal, Moya principally argues that the district judge abused her discretion in admitting into evidence a business card, which was found in a wallet taken from him at the time of his arrest. Moya claims that this evidence should have been suppressed due to the government's failure to disclose its existence pursuant to Rule 16 of the Federal Rules of Criminal Procedure. We agree with the district court that Moya was not prejudiced by the untimely disclosure of the wallet and the card, and we affirm.

## BACKGROUND

The evidence at trial, viewed in a light most favorable to the government, established the following:

In early April 1988, Moya's co-defendant Braulio Sanchez agreed to supply cocaine to one Mario Perez, a confidential informant working for the Drug Enforcement Agency (the "DEA"). On April 18, 1988, after several phone conversations, Perez picked up Sanchez who directed him to an apartment on Valentine Avenue in the Bronx. Inside the apartment, Sanchez introduced Perez to Moya, and Moya agreed to sell Perez three kilograms of cocaine the following day.

On April 19, 1988, Perez and Sanchez returned to the Valentine Avenue apartment. When Perez and Sanchez entered the apartment, Moya told them that the transaction would take place in Manhattan. After making a phone call, Moya led Perez and Sanchez to a clothing store in upper Manhattan.

Inside the store, Moya spoke with a man who wore his hair in a ponytail. That man led Moya, Perez and Sanchez to the basement and told them to wait there while he went for the cocaine. Subsequently, he returned with a bag containing three kilograms of cocaine. After tasting the drug to test it, Perez went outside where he signaled a DEA surveillance team.

The DEA agents then entered the store and arrested several persons including Sanchez. Moya and the man with the ponytail ran into an alley behind the store, and, while the latter escaped, the agents apprehended Moya in the lobby of a nearby apartment building.

In November 1988, in response to a discovery request, the Assistant United States Attorney ("AUSA") then responsible for the case told Moya's attorney that at trial he did not intend to present any evidence taken from Moya at the time of his arrest. However, on May 5, 1989, five days before the trial actually began, the AUSA to whom the case had been reassigned notified Moya's attorney that he had just learned that a wallet and other personal property had been recovered when Moya was arrested; the wallet contained a business card with the handwritten notations "Mario" next to Perez's beeper number and "Sanchez" next to a phone number. The next business day, May 8, 1989, the AUSA telefaxed a copy of the business card to Moya's attorney along with a letter indicating his intention to introduce the card at trial.

On May 9, 1989, Moya moved to suppress the card due to the government's failure to comply with his discovery request six months earlier. Judge Lowe tentatively ruled that the card could not be introduced into evidence, but indicated that she would reconsider the issue after hearing the government's case.

Two days later, on the second day of the four-day trial, during the direct testimony of DEA Agent James Hunt, the government sought permission to introduce the card. The district judge then attempted to fathom whether Moya had been prejudiced by the lateness of the government's disclosure of the wallet and the card.

Moya's attorney asserted that the wallet did not belong to his client. When asked what he would have done if the government had informed him of the existence of the evidence six months earlier, he stated that, as counsel assigned to represent an indigent defendant, he would have applied for the appointment of "an investigator so I could find out whose wallet [it is, and] find out how it was that it came into the possession of the DEA." In the colloquy which followed, the prosecutor made a proffer of the government's evidence linking the wallet to the defendant. The AUSA stated that Agent Hunt would testify (1) that the wallet was recovered from Moya at the time of his arrest; (2) that, together with other items recovered from Moya, the wallet was placed in a personal property envelope; and (3) that Moya had signed the envelope. Judge Lowe then held that, in light of this proffer, she would not have authorized an investigator absent some evidence that the wallet was not Moya's, and thus that Moya was not prejudiced by the lateness of the government's disclosure of the wallet and the card. The district judge indicated, however, that she would reconsider her ruling if Moya provided an affidavit—which would not be available for the government's use at trial—stating that the wallet was not taken from him. Judge Lowe explained:

Counsel, six months ago, if you had made an application for an investigator to determine whether or not that wallet was taken from your client at the time of his arrest and whether he signed that evidence envelope, I would have asked you to do the same thing in view of the fact that the government would have said Agent Hunt was present, took the articles, and put them in the envelope and saw your client sign it. There would be a direct conflict there.

All I am saying to you is you have your client give me an affidavit to support his application for an investigator.

Moya did not provide the requested affidavit, and the card was admitted into evidence.

Moya took the stand in his own defense and disavowed involvement in the transaction. He testified that the wallet in question was not his, and he produced another wallet—which he claimed he owned in April 1988—which contained his "green card." Moya asserted that, at the time of his arrest, he was wearing his work clothes, and that he never carried a wallet when he

wore his work clothes. In addition to this testimony, Moya sought to establish, during cross-examination of Agent Hunt, that the wallet did not contain any identification showing that it belonged to Moya, and that Agent Hunt had not mentioned the wallet in his reports relating to the arrest.

Moya was convicted on each of the two counts, and this appeal followed.

## DISCUSSION

Under Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure, "[u]pon request of the defendant the government shall permit the defendant to inspect ... tangible objects ... which are within the possession, custody or control of the government, and which ... are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant." Where the government fails to comply with this provision, the district court "may order [the government] to permit the discovery or inspection, grant a continuance, or prohibit the [government] from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Fed.R.Crim.P. 16(d)(2).

"Given the permissive language of Rule 16(d)(2) and the wide latitude given the trial court by that Rule, an order under Rule 16(d)(2) will not be set aside except for abuse of discretion." *United States v. Giraldo*, 822 F.2d 205, 212 (2d Cir.), *cert. denied*, 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 405 (1987). In deciding what remedy is appropriate under Rule 16(d)(2), the district court should consider, *inter alia*, whether the defendant was prejudiced by the government's delay in disclosing the evidence in question, *United States v. Turner*, 871 F.2d 1574, 1580 (11th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989); *see United States v. Padrone*, 406 F.2d 560, 561 (2d Cir.1969) (per curiam), and reversal will only be warranted if the nondisclosure results in substantial prejudice to the defendant, *cf. United States v. McElroy*, 697 F.2d 459, 465 (2d Cir.1982).

In considering whether to admit the disputed materials into evidence, Judge Lowe properly attempted to identify whether Moya suffered any prejudice as a result of the government's lateness in complying with its obligations under Rule 16(a)(1)(C). In light of Moya's attorney's assertion that, had the wallet and the card been revealed in a timely fashion, he would have applied for a court-appointed investigator, the district judge recognized that, without a showing that such an appointment was reasonably necessary, she would have rejected such a pre-trial application. She concluded that, under these circumstances, there would be no prejudice warranting exclusion of the wallet and the card. We consider whether such a ruling would have been an abuse of discretion.

> Under the Criminal Justice Act of 1964, [c]ounsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1) (1988); *see also* United States District Court for the Southern District of New York, Plan for Furnishing Representation Pursuant to Criminal Justice Act of 1964 at Part X(A) [hereinafter "Southern District Plan"].

▮ In deciding whether to authorize investigative services, "most courts rely on the judgment of the defense attorney if he makes a reasonable request in circumstances in which he would independently engage such services if his client was able to pay for them." *United States v. Oliver*, 626 F.2d 254, 259 (2d Cir.1980); *see United States v. Bass*, 477 F.2d 723, 725 (9th Cir. 1973). "Although the legislative history of § 3006A supports a liberal attitude toward these indigent requests, a judge is still obligated to exercise [her] discretion in determining whether such services are necessary." *Oliver*, 626 F.2d at 259–60 (footnote omitted); *United States v. Janis*, 831

F.2d 773, 777 (8th Cir.1987), *cert. denied,* 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988); *United States v. Moten,* 564 F.2d 620, 629 (2d Cir.), *cert. denied,* 434 U.S. 942, 959, 974, 98 S.Ct. 438, 489, 531, 54 L.Ed.2d 304, 318, 466 (1977). Thus, "[w]hile a trial court need not authorize an expenditure under [§ 3006A(e)] for a mere 'fishing expedition', it should not withhold its authority when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge." *United States v. Schultz,* 431 F.2d 907, 911 (8th Cir.1970) (footnote omitted); *accord United States v. Durant,* 545 F.2d 823, 827 (2d Cir.1976). Furthermore, the need for investigative services is heightened when the request relates to "pivotal" evidence, such as the card at issue herein. *Durant,* 545 F.2d at 828; *United States v. Patterson,* 724 F.2d 1128, 1130 (5th Cir.1984) (per curiam).

■ However, since a defendant requesting public funds pursuant to § 3006A(e) has the burden of satisfying the district court that the services are reasonably necessary, he "must articulate a reasonable basis for [the requested services]." *United States v. Norwood,* 798 F.2d 1094, 1100 (7th Cir.) (investigator to find witness), *cert. denied,* 479 U.S. 1011, 107 S.Ct. 656, 93 L.Ed.2d 711 (1986); *see, e.g., United States v. Goodwin,* 770 F.2d 631, 634–35 (7th Cir.1985) (unspecified investigative services), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986); *see also United States v. Rinchack,* 820 F.2d 1557, 1564

(11th Cir.1987) (district court should satisfy itself that defendant may have a plausible defense before authorizing funds for psychiatric expert); *United States v. Alden,* 767 F.2d 314, 318–19 (7th Cir.1984) (same). Moreover, "the trial court in probing the need for investigative aid may properly require that such need be established by sworn testimony presented ex parte." *Marshall v. United States,* 423 F.2d 1315, 1319 (10th Cir.1970); *accord* Southern District Plan at Part X(A) ("statements made in support of [an] application [for investigative services] shall be made under oath in court or by sworn affidavit").

■ Rather than relying on the oral representation of Moya's attorney, the district judge was entitled to require an affidavit disclaiming ownership of the wallet before appointing an investigator. Indeed, because the investigator was sought to refute the inference that the wallet belonged to Moya, the district court was permitted to seek assurance from Moya, who was in the best position to know whether the proposed inquiry would be fruitful. Since Moya refused to submit the requested affidavit, it would not have been an abuse of discretion had Judge Lowe denied an application made to her for an investigator.[1]

■ On appeal, Moya claims that his trial strategy was affected by the government's late disclosure of the wallet and the card, and that the government's violation of Rule 16 meant that he was compelled to testify in order to disclaim ownership of

---

1. We note that Congress provided that applications for investigative services should be made ex parte. *See United States v. Harris,* 707 F.2d 653, 662 (2d Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); VII *Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases* ¶ 3.03, at 3–3 (1990). Thus, notwithstanding the district judge's suggestion to the contrary, had the government provided the discovery as required under Rule 16(a)(1)(C) it would not have been entitled to hear or respond to Moya's application for an investigator.

While ex parte applications for investigative services "insure that the defendant will not have to make a premature disclosure of his case" and protect a defendant's privilege against self-incrimination, *Marshall,* 423 F.2d

at 1318 (citing H.R.Rep. No. 864, 88th Cong., 2d Sess., *reprinted in* 1964 U.S.Code Cong. & Admin.News 2990), neither of these concerns is applicable herein in light of the context in which the issue *actually* arose. Moya was not required to disclose his defense prematurely, and the district judge gave assurance that the affidavit would not be available to the government for use during the trial. This adequately protected Moya's fifth amendment interests. *Cf. Harris,* 707 F.2d at 662–63. Finally, the prosecutor merely indicated that the wallet had been retrieved from Moya and placed in an evidence envelope which he signed. Thus, the proffer added little to what would have been clear even in an ex parte application: that the government claimed that the evidence belonged to Moya.

the wallet. Moya's reliance upon cases such as *United States v. Padrone*, 406 F.2d 560 (2d Cir.1969) (per curiam), is misplaced. In *Padrone*, the government failed to disclose an inculpatory, post-arrest statement made by the defendant, and, after the defendant took the stand, used the statement on cross-examination. This court found that the defendant had been prejudiced since "[h]ad defense counsel known the contents of the statement, he might well have advised [the defendant] not to take the stand." *Id.* at 561. In the present case, however, Moya knew of the existence of the wallet and the card from the outset of the trial; he does not assert that his conduct at trial assumed that such evidence did not exist, and in light of the district court's admission of the card during the government's direct case, he certainly cannot claim that he was unaware that it would be used against him. *See United States v. Arcentales*, 532 F.2d 1046, 1050–51 (5th Cir.1976) (defendant not prejudiced where evidence is disclosed before he decides to testify); *see also United States v. Brodie*, 871 F.2d 125, 130–31 (D.C.Cir. 1989); *cf. United States v. Cirillo*, 499 F.2d 872, 881–83 (2d Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974). Moreover, while Moya may have perceived that his cross-examination of Agent Hunt was inadequate to refute ownership of the wallet, Rule 16(d) is concerned with the prejudice resulting from the government's untimely disclosure of evidence, rather than with the prejudice attributable to the evidence itself.

Since it is our view that Moya has not identified any cognizable prejudice resulting from the government's untimely disclosure of the wallet and the card, we conclude that Judge Lowe did not abuse her discretion in refusing to suppress this evidence.

## CONCLUSION

We have considered Moya's remaining claim—that the district court erred in refusing to give a missing witness charge—

and believe that it is without merit. The judgment of conviction is affirmed.