UNITED STATES of America, Plaintiff,

v.

Wilfredo TAVAREZ, Defendant.

No. 92–CR–1111 (ILG).

United States District Court,
E.D. New York.

May 6, 1993.

Beth Wilkinson, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, for plaintiff.

Pamela Metzger, Federal Defender's Service Unit, Legal Aid Soc., Brooklyn, NY, for defendant.

## OPINION AND ORDER DENYING MOTION FOR NEW TRIAL

FEIKENS, District Judge, Sitting by Designation.

On December 16, 1992, the jury convicted defendant, Wilfredo Tavarez, of conspiring to possess and distribute heroin (21 U.S.C. § 846) and of possession with intent to distribute heroin (21 U.S.C. § 841(a)(1)).

Defendant moves for a new trial.

His only contention is that government counsel misrepresented the contents of a Kel-tape recording of an August 26, 1992 meeting between Tomas Valerio, the government's principal witness; Rafael Espinal, a confidential informant (the "CI"); and Domingo Diaz (a/k/a Celo), the only defense witness.

The claimed misrepresentation is that government counsel informed defense counsel, when defense counsel so requested prior to trial, that the tape did not contain any reference to the defendant.

Prior to trial the government turned over the Kel-tape and eight other tapes, all in the Spanish language, to defense counsel.

At the onset of trial, defense counsel asked me to order the government to provide a transcript of the Kel-tape (Exhibit 10) to defendant. I declined to do so, since government counsel stated that no tapes would be used in the government's case. I also ruled that if this transcript "becomes important" we would discuss the request again (Tr. 32).

The government did not introduce the Kel-tape or a transcript of it in its case-in-chief.

When the government rested, defendant produced Domingo Diaz as its only witness. He was present at Valerio's apartment on August 26, 1992. His testimony sought to exculpate the defendant. Diaz claimed that he did not know who the supplier of drugs was and that Valerio had told him "some black men" were supposed to bring the heroin (Tr. 274). It is clear from the record that government counsel did not expect Diaz to testify because, by testifying, Diaz inculpated himself by admitting that he was involved in the drug deal.

After Diaz testified, and before the trial resumed, government counsel, Beth A. Wilkinson, outlined her conduct in an affidavit filed with the court and said:

13. On Monday, December 14, 1992, Agent Kernan and I reviewed the draft transcript for the August 26 kel tape to see whether there was anything in the tape inconsistent with Diaz's trial testimony. We located the portion of the transcript concerning Diaz. It was at that time that I first discovered two references to "Wilfredo" on page 68 of the transcript. I realized then that the participants in the conversation were discussing the arrival of Wilfredo Tavarez. Although there was no mention of heroin, I believed I could argue to the jury that the brief conversation concerning the arrival of "Wilfredo" showed that Tavarez was the expected supplier on August 26, 1992, thereby rebutting Diaz's testimony.

14. On December 14, 1992, I contacted Isolina Bernhardt, a Spanish interpreter, and asked her to review the tape and the draft transcript. I also contacted the CI and told him that I would now need his testimony on rebuttal. That same day, Ms. Bernhardt and the CI reviewed the tape and the transcript. Ms. Bernhardt prepared a final transcript for the rele-

vant portion of the tape which consists of only six pages of the original transcript.

15. The next day, December 15, 1992, I informed Ms. Metzger [defense counsel] that I was calling the CI as a rebuttal witness. When trial resumed, Ms. Metzger objected to the introduction of the tape and the transcript. She claimed that she had relied on the government's earlier statements that the tapes would not be introduced (Tr. 320). I explained that I had not planned to enter the tapes into evidence during the government's case-in-chief. I did not anticipate that Ms. Metzger would call a coconspirator who would claim that Tavarez was not the heroin supplier. (Tr. 320–21).

When trial resumed on December 15, 1992 to permit government rebuttal, an interpreter was called to translate the Kel-tape and transcript (Exhibits 9 and 10). Both exhibits were admitted into evidence without objection.[1] The government then called the CI, Rafael Espinal, and he testified that the government equipped him with a Kel-tape recorder and he then went to the meeting place. August 26 was the date that Valerio informed the CI that he would have 500 grams of heroin at his apartment. Diaz and the CI waited for Valerio, who eventually appeared without any heroin. As they waited, the CI testified that he heard Diaz, Valerio and others discuss the expected arrival of "Wilfredo." On cross-examination of the CI, defense counsel elicited testimony that Valerio's mother asked what kind of a car that the "person named Wilfredo was to come in" (Tr. 395). The CI testified that the reference to Wilfredo was to "the person bringing drugs but I didn't know who Wilfredo was." (Tr. 375).

Because of this claimed misrepresentation defendant now contends he was denied a fair trial. This argument is without merit.

I find no misrepresentation. When government counsel made the statement that the tape contained no reference to defendant, she relied on a first draft of the transcript. After Diaz testified on the defense side of the case, with the CI's assistance, a replay of the tape to an interpreter revealed the reference to "Wilfredo."

This testimony and the exhibits constitute proper rebuttal.

I note, too, that the CI, Rafael Espinal, testified himself as to the references to "Wilfredo." The tape was only used to corroborate his testimony. Espinal's testimony was admissible even if the tape had not been introduced.

Defense counsel opened the door to this rebuttal. After introducing Diaz's testimony, defendant sought to block the government's use of the tape to corroborate the CI's testimony. Failing in this, the defendant now claims foul.

Apart from the testimony of Rafael Espinal, the tape (Exhibit 9) and the transcript (Exhibit 10), there was substantial evidence of defendant's guilt.

A final and most important point. The tape was in the hands of defense counsel well before trial. There was no withholding of its contents. Defense counsel, defendant and Diaz had ample opportunity to play the tape. Defendant had to expect that, if incriminating evidence were on the tape, it could be used against him, particularly on rebuttal, in view of the testimony of Diaz. That "defendant's trial strategy was affected by the government's late disclosure" is without merit. *See United States v. Sanchez,* 912 F.2d 18 (2d Cir.1990). *See also United States v. Cirillo,* 499 F.2d 872 (2d Cir.1974).

In *Cirillo* the introduction at trial of two conversations involving the defendant, which were intercepted by a phone wiretap, was objected to based on the government's failure to disclose their existence before trial. The defendant alleged that the prosecutor, after questioning by defense counsel, denied that defendant participated in any of the taped conversations. Nevertheless, the prosecutor in *Cirillo* provided defendant with copies of all the tapes, along with a log of their contents. The court concluded that transcripts of the conversations that were eventually admitted as evidence also should have been

---

1. While objection should have been made to preserve the point, it is factual that defense counsel had earlier objected to their admission before Espinal testified.

94

given to defendant before trial. However, the prosecutor's failure to do so was an innocent oversight. *Cirillo* at 882. Defendant argued that this failure required a shift in his trial strategy, after having used a different strategy in opening arguments. Nonetheless, the court refused to find reversible error.

*United States v. Atisha,* 804 F.2d 920, 925 (6th Cir.1986), correctly summarized the law as follows:

> First, the mere fact that the defendant was surprised by the evidence does not mandate that the evidence be excluded. *See [U.S. v.] Herring,* 582 F.2d [535,] 541 [ (10th Cir.1978) ]; *United States v. Wixom,* 529 F.2d 217, 220 (8th Cir.1976) (per curiam). Second there is no rule that evidence must be excluded or a mistrial granted on the basis that a defendant had committed himself to a theory which was undermined by new evidence. *See United States v. Bavers,* 787 F.2d 1022, 1028 (6th Cir.1985). There is *always* a possibility that new evidence will be discovered, even if the defense was structured around assurances made by the government. This may be particularly so when the indictment charges a conspiracy (emphasis in original).

For these reasons defendant's motion for a new trial is DENIED.

IT IS SO ORDERED.