16-3956-cr
United States v. Djibo

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of April, two thousand eighteen.

PRESENT:    ROBERT D. SACK,
            PETER W. HALL,
            CHRISTOPHER F. DRONEY,
                    *Circuit Judges*.

------------------------------------------------------------------------
UNITED STATES OF AMERICA,

       *Plaintiff-Appellee*,

       v.                                                    No. 16-3956-cr

ADAMOU DJIBO,

       *Defendant-Appellant*.

------------------------------------------------------------------------

For Appellant:          ZACHARY MARGULIS-OHNUMA (Adam Elewa, *on the brief*), Law Office of Zachary Margulis-Ohnuma, New York, New York.

For Appellee:           DAVID K. KESSLER, Assistant United States Attorney (David C. James and Claire S. Kedeshian, Assistant United States Attorneys, *on the brief*), *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Johnson, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 23, 2017,[1] is **AFFIRMED IN PART AND VACATED AND REMANDED IN PART**.

Defendant Adamou Djibo ("Djibo") was convicted by a jury of orchestrating an international heroin smuggling operation in which he used couriers to traffic heroin from Togo to the United States. Djibo was sentenced to 293 months incarceration to be followed by five years of supervised release. The district court also ordered Djibo to forfeit $1,921,200, representing the wholesale value of the heroin seized from his coconspirators during the government's investigation.

The government's case was built primarily on the testimony of its cooperating witness, Stanley Walden ("Walden"). Walden testified that he trafficked drugs for Djibo on approximately ten occasions. Walden explained that his role was to travel to Togo, pick up heroin, and smuggle it back to the United States. Walden testified that Djibo arranged the trips, including buying his airline tickets and paying him approximately $15,000 for each kilogram of heroin he smuggled.

The government corroborated Walden's testimony with information from Walden's cellphone, including records of phone calls, text messages, emails, and WhatsApp messages. Relevant to this appeal, approximately six months before trial, Djibo's counsel requested all the data recovered from Walden's cellphone. On July 7, 2015, the government responded with approximately 50 partially redacted pages of Walden's cellphone records, consisting primarily of

---

[1] Judgement was initially entered on November 10, 2016. On December 16, 2016 and May 23, 2017, the district court entered amended judgments.

Walden's conversations with Djibo. After several continuances, the district court set a trial date for January 19, 2016. On January 8, 2016, after receiving the government's proposed exhibits, Djibo moved to compel all of Walden's cellphone records. On January 13, 2016, the district court granted Djibo's motion to compel.

According to Djibo, Walden's cellphone records consisted of roughly 8,000 pages of material, with at least hundreds of pages containing conversations in Swahili. Due to the late disclosure, Djibo moved to preclude the government from using the records or, in the alternative, for a short adjournment of the trial to permit him to properly examine the information. The district court granted Djibo a one-day adjournment. As a result, only a portion of the Swahili conversations could be translated in time for their use at trial.

After Djibo was convicted, defense counsel requested resources under the Criminal Justice Act ("CJA") for a Swahili translator to prepare post-trial motions. The district court never responded to counsel's request for translation services. As a result, when this appeal was submitted, defense counsel did not have the complete translation of Walden's cellphone records.

Before trial, the government's pretrial submissions indicated that it intended to introduce evidence demonstrating that Columbus Amankona ("Amankona") and Emmanuel Boahene ("Boahene") were also couriers working for Djibo. In 2013, law enforcement had arrested Amankona and Boahene at John F. Kennedy International Airport while they were attempting to smuggle heroin into the United States. Djibo opposed the evidence concerning Amankona and Boahene, arguing that the government had not demonstrated any connection between Djibo and those two couriers. The district court allowed the government to introduce evidence of the couriers subject to the government connecting them to Djibo. At the close of the government's

3

case, the district court struck the evidence relating to Amankona and Boahene, ruling that the government failed to make the connection. The district court also issued two limiting instructions telling the jury that they were prohibited from considering any evidence related to Amankona and Boahene during their deliberations.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I.    *Brady* Violation

In his Fed. R. Crim. P. 33 motion, Djibo argued that the government effectively suppressed *Brady* and *Giglio* material by waiting until the eve of trial and the court's disclosure order to reveal the entire contents of Walden's cellphone. Djibo submits that the records are replete with leads that could have aided him in preparing his defense and that earlier disclosure would have allowed him to translate all the Swahili conversations before trial.

We review a denial of a motion for a new trial pursuant to Rule 33 for abuse of discretion. *United States v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000). *Brady* imposes a constitutional duty on the government to disclose evidence favorable to the accused where such evidence is material either to guilt or to punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). Under *Giglio*, the government's *Brady* obligations are extended to "evidence that is useful to impeach the credibility of a government witness." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). To establish a *Brady* or *Giglio* violation, "a defendant must show that: (1) the [g]overnment, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *Id.* at 140.

4

Although there is no precise deadline for when the government is required to disclose *Brady* and *Giglio* material, we have held that *Brady* requires disclosure "in time for its effective use at trial . . . ." *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (internal quotation marks omitted); *accord DiSimone v. Phillips*, 461 F.3d 181, 196–97 (2d Cir. 2006). For *Brady* purposes, materiality is determined by whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Fuentes v. T. Griffin*, 829 F.3d 233, 246 (2d Cir. 2016) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

On the record before us, we cannot determine whether Djibo's rights were violated under *Brady* and *Giglio*. The translated portions of Walden's conversations indicate that there may be information that qualifies as *Brady* or *Giglio* material. For instance, Walden had a conversation in Swahili with Lily Lukamilwa ("Lukamilwa"), in which they discussed international travel, concerns about border agents and searches, and "seven kilos" being sent somewhere. Walden explained that he discussed his travel plans with Lukamilwa so that she could relay the information to a spiritual advisor for his protection. Without the complete translation, however, it is impossible to determine whether this conversation presents impeachment or exculpatory evidence or whether Walden's explanation is confirmed by the remaining untranslated records. Moreover, without the complete record, the Court cannot evaluate whether Djibo suffered prejudice by the government's late disclosure or whether refusal to provide resources for a Swahili translator prevented Djibo from mounting a fruitful defense. We therefore vacate the district court's denial of Djibo's Rule 33 motion and remand for the district court to provide Djibo resources for a Swahili

5

translator, reasonable time to accomplish a thorough review of the records with the assistance of the translator, and the opportunity, if he then chooses, to renew his Rule 33 motion.[2]

## II.     CJA Resources

Djibo submits that the district court abused its discretion by denying his counsel's requests for a private investigator to prepare for trial and a Swahili translator to prepare post-trial motions. We review for abuse of discretion a district court's decision to deny CJA funding.  *See United States v. Bah*, 574 F.3d 106, 118 (2d Cir. 2009).   The CJA requires that the district court provide "investigative, expert, and other services necessary for adequate representation."   18 U.S.C. § 3006A(a).   A defendant seeking CJA resources "has the burden of satisfying the district court that the services are reasonably necessary," and "he must articulate a reasonable basis for [the requested services]."   *United States v. Sanchez*, 912 F.2d 18, 22 (2d Cir. 1990) (internal quotation marks omitted).

For the reasons already stated, the district court exceeded the bounds of its discretion by ignoring defense counsel's request for the use of a Swahili translator.   With respect to employing a private investigator, the defense did not request a private investigator to assist in preparing post-trial motions, nor did it pursue a new trial on the basis that the lack of a private investigator denied Djibo due process.   On appeal, moreover, defense counsel does not adequately identify specific

---

[2] After oral argument, the government submitted a letter stating that a "Swahili linguist . . . briefly reviewed" the untranslated portions of Walden's cellphone records identified by the defense and that the translations are consistent with the evidence the defense used to cross-examine Walden. Dkt. No. 97 at 1.   The government argues that "this cumulative material does not support the contention that the defendant was prejudiced by being unable to use certain Swahili messages during the trial."   *Id.* at 1–2.   This Court is troubled by the government's uninvited supplemental briefing and proposed expansion of the record.   The government's submission is procedurally improper, *see* Fed. R. App. P. 10(e), 28(j), and it will not be considered in connection with this appeal.

avenues of investigation that would require court appointment of a private investigator. We therefore find no abuse of discretion in the court's refusal to authorize one. To the extent a private investigator becomes necessary to assist in examining or following up on the new information obtained from Walden's cellphone, we leave it to the district court in the first instance to decide whether a private investigator would be necessary to aid Djibo in renewing his motion for a new trial.

### III. Prosecutorial Misconduct

Djibo also argues he is entitled to a new trial because the government engaged in misconduct by: (1) introducing evidence of Amankona's and Boahene's drug smuggling without showing a sufficient connection to Djibo; (2) using evidence referencing Boahene to improperly inform the jury that Djibo was incarcerated while awaiting trial; and (3) raising baseless authenticity objections during defense counsel's cross-examination of Walden.

To warrant reversal for prosecutorial misconduct, the misconduct "must cause the defendant 'substantial prejudice' by 'so infecting the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002) (quoting *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999)). Djibo does not identify any prosecutorial misconduct, much less misconduct so infecting the trial with unfairness as to deny him due process. Although the evidence tying Amankona and Boahene to Djibo was not overwhelming, the government had a good faith basis to introduce evidence of their criminal activity. There is also no merit to Djibo's argument that the government used Boahene as pretext to admit evidence suggesting Djibo was incarcerated while awaiting trial. Finally, there is

7

nothing to suggest that the government's conduct during defense counsel's cross-examination of Walden caused Djibo to suffer substantial prejudice.

## IV. Sentencing

Djibo argues that his sentence is procedurally unreasonable because the district court did not make any findings supporting enhancement under § 3B1.1 of the United States Sentencing Guidelines ("Guidelines"), and its decision to depart from the Presentence Investigation Report's ("PSR") Guidelines calculation. Djibo also argues that his sentence is substantively unreasonable because "293 months for a non-violent, first-time offender facing certain deportation upon release is shockingly high." Appellant's Br. at 59 (internal quotation marks omitted).

We review sentencing determinations for both substantive and procedural reasonableness. *United States v. Cavera*, 550 F.3d 180, 189–90 (2d Cir. 2008) (en banc). Under § 3553(c), the district court is required to "state in open court the reasons for its imposition of the particular sentence," and must do so "at the time of sentencing . . . ." 18 U.S.C. § 3553(c). Although there is no requirement that a district judge "provide lengthy or elaborate explanations" for its sentencing decision, *United States v. Genao*, 869 F.3d 136, 142 (2d Cir. 2017), the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing," *Gall v. United States*, 552 U.S. 38, 50 (2007). Indeed, "the defendant, the public, and appellate courts should not be required to engage in guesswork about the rationale for a particular sentence." *Genao*, 869 F.3d at 142. We have excused a district court's failure to explain a sentence only where the district court adopts "the presentence investigation report in open court and the factual findings in the report are adequate to support the

8

sentence." *United States v. Pruitt*, 813 F.3d 90, 92 (2d Cir. 2016); *accord United States v. Payne*, 591 F.3d 46, 70 (2d Cir. 2010).

Djibo's sentence is procedurally unreasonable. The district court did not explain its sentencing decision, and the PSR does not support the sentence. The Probation Office calculated Djibo's total offense level at 43 with a criminal history category I, resulting in a Guidelines range of up to life in prison. Djibo's offense level reflected an enhancement for Djibo's involvement in at least 100 kilograms of heroin, *see* U.S.S.G. § 2D1.1(c)(1); an aggravating role enhancement for importing a controlled substance, *see* U.S.S.G. § 2D1.1(b)(15)(C); and a four-level enhancement reflecting Djibo's role as the leader of the conspiracy, *see* U.S.S.G. § 3B1.1(a).

Djibo's counsel urged the district court to sentence Djibo to the ten-year statutory minimum, arguing that the § 3B1.1 enhancement was unsupported by the record because there was no evidence connecting Amankona and Boahene to Djibo, and that Djibo was only responsible for the roughly 6.5 kilograms of heroin seized from Walden, not the 100 kilograms identified in the PSR. The government argued that the PSR's Guidelines calculation was correct but stated that it would also be appropriate for the district court to apply a more conservative Guidelines range reflecting the 6.5 kilograms of heroin seized from Walden. If that lower drug quantity were applied, it would have reduced Djibo's base offense level to 38, resulting in a Guidelines range of 235 to 293 months imprisonment.

At the sentencing hearing, the district court adopted the PSR without change and sentenced Djibo to 293 months incarceration to be followed by five years of supervised release. The district court did not make any findings with respect to the § 3553(a) factors, nor did it meaningfully discuss Djibo's objections. In pronouncing the sentence, the district court merely stated: "I have

adopted the recommendation by the Probation Department . . . I have taken into consideration the 3553(a) factors. I have taken into consideration the submissions by both counsel and argument by both counsel." App'x at 373–74.

After the sentencing hearing, however, the district court issued a Statement of Reasons rejecting the PSR's recommendation and reducing the total offense level to 38, resulting in a Guidelines range of 235 to 293 months incarceration. The Statement of Reasons appeared to adopt the government's suggestion that the district court consider a conservative offense level representing the 6.5 kilograms of heroin seized from Walden. Nonetheless, six months later, the district court issued a Revised Statement of Reasons and amended judgment adopting the PSR's Guidelines calculation without change and reimposing a below Guidelines sentence of 293 months because of Djibo's family ties and responsibilities.

There are principally two issues with the district court's approach. The district court provided no explanation for its stark departure from the PSR's recommendation, and the PSR does not support the district court's sentence. The PSR's Guidelines range was driven by the Probation Office's finding that Djibo's couriers imported over 100 kilograms of heroin during the conspiracy. The district court imposed a sentence that was at the top of the government's suggested Guidelines range, which only considered the 6.5 kilograms seized from Walden. Without the benefit of the district court's explanation, it is impossible to decipher what factors contributed to the district court's departure from the Guidelines. *United States v. Dorvee*, 616 F.3d 174, 180 (2d Cir. 2010) ("[A]ny court issuing a sentence outside the Guidelines 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" (quoting *Gall*, 552 U.S. at 49–50)).

10

The district court also did not explain why it accepted the Probation Office's recommendation for a § 3B1.1 enhancement where the PSR's basis for the enhancement rested on unconnected evidence. To support the § 3B1.1 enhancement, the Probation Office proffered that Djibo used three couriers to smuggle heroin, including Walden, Amankona, and Boahene. The Probation Office also stated that Djibo oversaw at least three coconspirators who met couriers in Togo and helped them obtain heroin to transport to the United States.[3] Problematically, however, the district court ruled at trial that the government had not introduced sufficient evidence connecting Amankona and Boahene to Djibo. At oral argument on appeal, the government's counsel speculated that the district court considered Amankona and Boahene for purposes of sentencing because it was persuaded by the government's response to Djibo's Rule 33 motion. But without the benefit of the district court's explanation we are left guessing on what basis the district court found Amankona and Boahene part of the conspiracy.

Because the district court did not explain its reasons for the sentence imposed and because the factual findings in the PSR are not, by themselves, clearly adequate to support the sentence, we conclude that Djibo's sentence was procedurally unreasonable. Because we vacate Djibo's sentence on procedural grounds, we decline to address Djibo's alternative argument that his

---

[3] The PSR is not clear on this issue. The PSR first states that Djibo "coordinated with at least 4 co-conspirators the delivery of the heroin to the couriers . . . ." PSR at ¶ 23. In the next paragraph, the PSR recommends the enhancement because Djibo "oversaw at *least 3 co-conspirators* who provided the couriers with the heroin in Africa . . . ." PSR at ¶ 24 (emphasis added). For this additional reason, the district court should have articulated the basis for the enhancement because the applicability of § 3B1.1 is driven, in part, by the number of individuals involved in the conspiracy. *See* U.S.S.G. § 3B1.1(a); *id.* at app. n. 3 (noting that "[i]n assessing whether an organization is 'otherwise extensive,'" the district court should consider "all persons involved during the course of the entire offense[,]" even "the unknowing services of many outsiders").

11

sentence is substantively unreasonable. *Cavera*, 550 F.3d at 190 ("Where we find significant procedural error, one proper course would be to remand to the district court so that it can either explain what it was trying to do, or correct its mistake and exercise its discretion anew . . . ."); *Genao*, 869 F.3d at 147–48. Addressing the substantive reasonableness of Djibo's sentence would be inapposite in this posture given that the factual basis for the applicable Guidelines range is unresolved. *Gall*, 552 U.S. at 49 (noting that "the Guidelines should be the starting point and the initial benchmark"). We vacate Djibo's sentence and remand to the district court for *de novo* resentencing.

## V. Forfeiture

Djibo submits that the Order of Forfeiture must be vacated because the government failed to prove that his Connecticut residence was eligible for seizure as a substitute asset under 21 U.S.C. § 853(p)(1). Djibo further argues that the Supreme Court's decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), requires vacatur of the Order of Forfeiture because the judgment held Djibo jointly and severally liable for all the heroin seized during the government's investigation.

Pursuant to 21 U.S.C. § 853(a), a defendant convicted of any narcotics crime must forfeit "any property constituting, or derived from, any proceeds . . . obtained, directly or indirectly, as the result of [a violation of Title 21]" and "any . . . property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . . ." 21 U.S.C. § 853(a)(1)-(2). Section 853(p) entitles the government under certain conditions to seek forfeiture of substitute assets up to the value of any forfeiture money judgment imposed. *Id.* § 853(p).

As conceded by the government, Appellee's Br. at 62, the Order of Forfeiture must be vacated because the order imposes a money judgment against Djibo for the wholesale value of the 32.02 kilograms of heroin seized from Walden, Amankona, and Boahene.[4] In *Honeycutt*, the Supreme Court ruled that the government can no longer obtain forfeiture under § 853(a)(1) on a theory of joint-and-several liability. 137 S. Ct. at 1633. The Court reversed a Sixth Circuit decision that held that the government was entitled to a forfeiture money judgment against a defendant who worked in a store owned by his brother and participated in sales of a chemical used to manufacture methamphetamine but did not personally receive any of the proceeds of the sales. *Id.* at 1630–31. The Court held that § 853(a)(1) forfeiture "is limited to property the defendant himself actually acquired as the result of the crime." *Id.* at 1635. We therefore vacate the Order of Forfeiture and remand to the district court to consider the government's forfeiture motion in light of *Honeycutt*.

This disposition makes it unnecessary to address whether the district court erred in concluding that Djibo's residence and foreign assets are forfeitable as substitute assets. In *Honeycutt*, the Supreme Court noted that § 853(p) "begins from the premise that the defendant once possessed tainted property as 'described in subsection (a),' and provides a means for the Government to recoup the value of the property if it has been dissipated or otherwise disposed of by 'any act or omission of the defendant.'" *Id.* at 1634 (quoting 21 U.S.C. § 853(p)(1)). In other words, the government can seek forfeiture of substitute property only when the requirements of §§ 853(a) and (p) are satisfied. *Id.* The district court's reconsideration of the Order of

---

[4] The Order of Forfeiture also ignores the district court's determination that the government did not connect Amankona and Boahene to the conspiracy. For this additional reason, the Order of Forfeiture must be vacated.

Forfeiture will necessarily require the court to consider whether there is proof by a preponderance of the evidence that Djibo once possessed tainted property, as described by § 853(a), and, whether by his own act or omission, that property has been dissipated or is otherwise unobtainable. *Id.*; *United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007) ("Sentencing courts determine forfeiture amounts by a preponderance of the evidence.").

## VI. Reassignment

Finally, we direct that this case be reassigned to a different judge upon remand to the district court. In deciding whether to direct reassignment, we consider

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*United States v. DeMott*, 513 F.3d 55, 59 (2d Cir. 2008) (per curiam) (internal quotation marks and alterations omitted). To find that reassignment is warranted to preserve the appearance of justice, "we need not find actual bias or prejudice, but only that the facts might reasonably cause an objective observer to question the judge's impartiality." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 21 (2d Cir. 1996) (internal quotation marks and alteration omitted).

Here, certain aspects of the proceedings below make reassignment necessary. Specifically, we are concerned about the district court's repeated denials of and failures to respond to requests for CJA resources, its granting a mere one-day adjournment of trial for defense counsel to review and translate voluminous and possibly key exculpatory evidence, and the multiple irregularities in the sentencing process described more fully above, including the issuance of a second statement of reasons after the notice of appeal was filed that contradicted the first statement

of reasons. While we appreciate the difficulties district courts face in adjudicating complex criminal matters and allocating resources, and although we do not conclude the district judge acted with any bias or prejudice, the circumstances presented here raise enough of a question that reassignment is necessary to preserve the appearance of justice. *See DeMott*, 513 F.3d at 59. Moreover, any waste or duplication that may result from reassignment is not out of proportion to the gain in preserving the appearance of fairness. *See id.*

## VII.    Conclusion

We have considered Djibo's remaining arguments and find them to be without merit. We **VACATE** the district court's denial of Djibo's Rule 33 motion, Djibo's sentence, and the district court's Order of Forfeiture, **REMAND** for proceedings consistent with this order, and **AFFIRM** the judgment in all other respects.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court