07-4370-cr
United States v. Bah

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: November 25, 2008    Decided: July 31, 2009)

Docket No. 07-4370-cr

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

      Appellee,

      -v.-                    07-4370-cr

BOUBACAR BAH,

      Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -x

     Before:       JACOBS, Chief Judge, WALKER and
                   CALABRESI, Circuit Judges.

    Defendant-Appellant Boubacar Bah appeals from a judgment of conviction entered October 5, 2007 in the United States District Court for the Southern District of New York (Kaplan, J.). Bah was convicted after a jury trial on one count of operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. We conclude that the district court erred in refusing to give Bah's requested

jury instruction on the scope of Section 1960.  Vacated and remanded.

MICHAEL A. YOUNG, New York, NY, for Defendant-Appellant.

ANIRUDH BANSAL, Assistant United States Attorney (Christopher LaVigne and Kevin R. Puvalowski, Assistant United States Attorneys, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

DENNIS JACOBS, Chief Judge:

Defendant-Appellant Boubacar Bah appeals from a judgment of conviction, entered October 5, 2007 after a jury trial in the United States District Court for the Southern District of New York (Kaplan, J.), on one count of operating an unlicensed money transmitting business in New York in violation of 18 U.S.C. § 1960.

There is no doubt that Bah received money in New York for transmittal abroad; Bah tried to defend on the ground that the money he received in New York was transmitted from New Jersey, and that he was licensed to operate a money transmitting business in that state.  The district court precluded Bah in limine from offering evidence of the New Jersey license, reasoning that the federal statute

2

prohibited operating a money-transmitting business that is unlicensed under state law, and that Section 1960 thus incorporates into federal law the provision in New York Banking Law § 650 that prohibits (<u>inter alia</u>) engaging without a license in the businesses of transmitting money <u>or</u> receiving money for transmission.  The court therefore determined that Bah could be convicted under Section 1960 if he engaged in New York in the business of receiving money for transmission without a license, regardless of whether he transmitted the money pursuant to a valid license in New Jersey.  The district court gave a jury instruction to that effect at the conclusion of trial.

Bah argues that the district court erred in: [i] refusing to give his requested charge on the scope of Section 1960; [ii] precluding him from offering evidence of his New Jersey license; [iii] permitting the government to cross-examine a character witness concerning a five-year-old customer complaint; and [iv] denying him Criminal Justice Act funding to call thirteen witnesses from overseas.

We hold that the district court erred in concluding that Section 1960 incorporates into federal law the feature of New York Banking Law § 650 that prohibits engaging in the

3

business of <u>receiving</u> money for transmission without a license.  This error tainted the district court's jury charge and the presentation of evidence and argument at trial.

We cannot determine from the record whether Bah was convicted for operating an unlicensed money transmitting business, which is prohibited by federal law, or for engaging (without a license) in the business of receiving money for transmission, which is prohibited by New York law, but not federal law.  Although the government adduced evidence that Bah (who had several legitimate businesses) had transmitted money abroad from a Banco Popular branch in the Bronx, it is not clear beyond a reasonable doubt that a properly instructed jury would have found that the transmittals from New York were part of a money transmitting business, as opposed to one of Bah's various other enterprises.  We therefore vacate Bah's conviction and remand for a new trial.  We go on to consider Bah's remaining claims in anticipation of a potential retrial, and find them to be without merit.

4

# BACKGROUND

In 2003, Drug Enforcement Administration agents learned that heroin traffickers in the Bronx had used a company named B&S Bah Enterprises to transmit suspected drug proceeds. Agents discovered that B&S Bah Enterprises was operated by Bah from an office in a restaurant he owned at 1715 Webster Avenue in the Bronx, New York. When agents arrested Bah on April 21, 2006, he consented to a search of his restaurant in the Bronx and of his home and office in Fort Lee, New Jersey, and he answered the agents' questions about his businesses.

On February 27, 2007, Bah was charged in a three-count indictment with conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h); operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960; and making false statements at a December 21, 2006 meeting with the government, in violation of 18 U.S.C. § 1001. On the eve of trial, the money laundering count was severed because the government's key witness had fled to Africa. Trial on the remaining two counts commenced on April 4, 2007, and concluded on April 6, 2007, when the jury convicted Bah on the money-transmitting count and acquitted

him on the false-statements count.

**The Government's Case.** At trial, the government introduced evidence establishing that certain customers came to Bah's restaurant in the Bronx, delivered U.S. currency, and instructed Bah to deliver the equivalent value of local currency to recipients in West Africa. Bah provided Bronx customers with receipts and/or codes to ensure that the money was received by the correct party overseas.

The government's evidence included testimony from four customers who delivered money to Bah in the Bronx for transmission to Guinea or Sierra Leone. The physical evidence consisted mainly of items seized from the office at the back of the restaurant on Webster Avenue: a laptop computer; an electric money counter; "money receipts for [a] money transmission business" (blank and filled out); faxes addressed to Bah requesting "transfers" of United States currency; spreadsheets and ledgers bearing the name B&S Bah Enterprises and the Bronx address, and showing records of money transfers; business cards for B&S Bah Enterprises at the Webster Avenue address, with Bah listed as "President," and the words "Money Transfer, Import & Export, Shipping"; and a commercial lease application dated July 18, 2002,

6

signed by Bah, for "B&M Bah Money Remittance Corp.," listing Bah's "Existing Business Address" as 1715 Webster Avenue in the Bronx, and Bah's "Years in Business" as "6 years."

The government also introduced bank records showing that B&S Bah Enterprises transferred more than $1.2 million through a Banco Popular branch in the Bronx, during the period from January 2002 through August 2002. The account was opened in October 2001 in Bah's name and listed 1715 Webster Avenue as the company's address. At the time Bah closed the account, the bank was investigating his account activity because of the number of monthly deposits, and because 95 to 97 percent of the deposit proceeds were transferred to foreign accounts.

Other prosecution evidence included a statement from a 2004 civil deposition in which Bah explained the operation of his money transmitting business and his arrangement for transferring money through businesses in Africa; and a letter, dated October 14, 1999, to the then Immigration and Naturalization Service ("INS"), on letterhead of "B&S Bah Enterprises" with the Bronx address, advertising "Import & Export," "Money Transfer[]," and "Shipping" services. Bah's letter to the INS explained that the purpose of his business

7

was to arrange the transfer of funds to countries in West Africa.

The government introduced Bah's admissions to federal agents: that he had looked into obtaining a money transmitting license in New York State, but determined that it was too expensive;[1] that he had money transmitting receipts at his restaurant in the Bronx because he often brought documents from New Jersey to do "accounting work" in New York; and that, of the $50,000 to $60,000 he collected each week, $15,000 to $20,000 was collected in New York.

Bah stipulated at trial that neither he nor B&S Bah Enterprises had ever been licensed by the State of New York for the businesses of receiving money for transmission or transmitting money and that B&S Bah Enterprises had never registered with the United States Treasury as a money transmitting business.

**Bah's Defense.** Bah testified as follows in his own defense. He opened B&S Bah Enterprises in New York in 1999 as a means by which African immigrants living in this country could avoid corruption and theft in certain African

---

[1] Bah testified at trial that he would have needed $500,000 cash to obtain a license in New York because of bond requirements.

banking systems. In exchange for payment in the United States, Bah's company purchased products (such as food, clothing, electronics, and building supplies) that were delivered to his native Guinea and other African countries.

After several years of operating his export/import business, Bah was approached by customers wanting to safely deliver cash to friends and family in Africa. To meet this need, Bah opened a money transmitting business in New Jersey named B&M Bah Enterprises, Inc.[2]

Bah did not transfer money directly from the United States to Africa. Rather, he set up a system whereby customers in the United States gave him cash, which he used to purchase goods to sell in Africa. Bah then sold those goods to African merchants and used the proceeds to pay money transfer recipients.

Bah did not operate a money transmitting business prior to opening his New Jersey business in 2002; records pre-dating that business concerned the transmission of money overseas for the purpose of purchasing goods for export.

---

[2] Although Bah was not permitted to introduce evidence of his New Jersey money transmitting license at trial, it is undisputed that Bah obtained such a license on or about June 13, 2002, and that he registered his New Jersey business with the federal government on or about September 23, 2002.

Bah called three character witnesses who testified to his reputation for truthfulness in the community. The witnesses also testified that they had delivered money to Bah in the United States as payment for the delivery of food or goods to Guinea. Bah stopped calling character witnesses after the district court permitted the government to cross-examine a witness regarding an unsigned 2002 letter allegedly written by one of Bah's customers accusing him of fraud and theft.

**Sentencing.** At sentencing, it was determined that Bah had an offense level of four and a Criminal History Category of one, resulting in a United States Sentencing Guidelines ("Guidelines") range of 0-6 months' incarceration. The district court adopted the Probation Department's recommendation and sentenced Bah to a term of one year's probation and a $1,000 fine. The district court explained that no greater sentence was necessary because the crime of conviction was a strict liability offense, and it appeared that Bah was attempting to follow the law while supporting himself and serving a legitimate need in his community. The district court declined to resolve outstanding Guidelines calculation issues because it considered that the sentence

10

it was imposing was sufficient to satisfy the factors set forth in 18 U.S.C. § 3553.  Neither party challenges the sentence imposed by the district court.  It is unclear whether Bah has served his sentence; but the ramifications of his conviction under the immigration laws may be significant.

**DISCUSSION**

**I**

**A. Scope of 18 U.S.C. § 1960**

Bah was convicted under 18 U.S.C. § 1960, which provides (in relevant part):

> (a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1960(a).  "[T]he term 'money transmitting' includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier."  Id. § 1960(b)(2).  An "unlicensed money transmitting business" includes "a money transmitting

business which affects interstate or foreign commerce in any manner or degree and . . . is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law."[3]  Id. § 1960(b)(1)(A).

New York Banking Law § 650 is one such licensing statute.[4]  Subsection (2)(a)(1) establishes licensing requirements for two distinct activities: "[i] engag[ing] in the business of receiving money for transmission or [ii] transmitting the same."  Only the latter licensing

---

[3] The other kind of unlicensed money transmitting business relevant under Section 1960 is one that "fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code."  18 U.S.C. § 1960(b)(1)(B).

[4] New York Banking Law § 650 provides that "[a]ny person who . . . engages in the business of receiving money for transmission or transmitting the same . . . without a license therefor obtained from the superintendent as provided in this article, shall be guilty of a Class A misdemeanor."  N.Y. Banking Law § 650(2)(a).  New York Banking Law § 650(2)(b) provides increased penalties for offenses involving the transfer of $10,000 or more in a single transaction, a total of $25,000 or more during a period of thirty days or less, or a total of $250,000 or more during a period of one year or less.  The New York Banking Law "makes the operation of an unlicensed money transmitting business either a misdemeanor or a felony, which in turn subjects the offender to federal criminal penalties under 18 U.S.C. § 1960."  United States v. Velastegui, 199 F.3d 590, 594 (2d Cir. 1999).

12

requirement, however, is incorporated into federal law: Section 1960 explicitly defines "money transmitting" as "transferring funds on behalf of the public by any and all means."  18 U.S.C. § 1960(b)(2); see also S. Rep. No. 101-460, at 36 (1990), reprinted in 1990 U.S.C.C.A.N. 6645, 6681 ("'Money transmitting' means transferring funds on behalf of the public.").  The federal statute does not mention the receipt of money for transmission.

It is not surprising that the New York statutory prohibition is broader than the federal.  Section 1960 "was enacted in order to combat the growing use of money transmitting businesses to transfer large amounts of the monetary proceeds of unlawful enterprises."  United States v. Velastegui, 199 F.3d 590, 593 (2d Cir. 1999) (citing S. Rep. No. 101-460, at 14 (1990), reprinted in 1990 U.S.C.C.A.N. 6645, 6658-59).  The statute is designed, inter alia, to prevent the movement of funds in connection with drug dealing and terrorism.  H.R. Rep. No. 107-250(I), at 54 (2001).  For these purposes, it is sufficient to be able to identify and monitor the transmissions themselves.

The New York statute reflects that state's broader interest in licensing and regulating financial institutions.

13

See, e.g., N.Y. Banking Law § 642(1) (requiring Superintendent of Banks to assess the "financial condition and responsibility, financial and business experience, character and general fitness" of a prospective money transmission licensee and to determine whether "the applicant's business will be conducted honestly, fairly, equitably, carefully[,] efficiently . . ., and in a manner commanding the confidence and trust of the community"). New York also stands to lose licensing fees if licensees from (say) New Jersey can seek business in New York. See N.Y. Banking Law §§ 18-a(4), 641(3) (prescribing an "investigation fee" for any application for a money transmitting license). However, the broader prohibitions of the New York statute do not expand the reach of the federal statute.

**B. Bah's Requested Jury Instruction**

We review de novo a district court's refusal to issue a requested jury instruction. United States v. Desinor, 525 F.3d 193, 198 (2d Cir. 2008). "[T]he defendant 'bears the burden of showing that the requested instruction accurately represented the law in every respect and that, viewing as a whole the charge actually given, he was prejudiced.'"

14

United States v. Nektalov, 461 F.3d 309, 313-14 (2d Cir. 2006) (quoting United States v. Wilkerson, 361 F.3d 717, 732 (2d Cir. 2004)).

Pre-trial, the district court observed that New York Banking Law § 650 "makes it unlawful to 'engage[] in the business of receiving money for transmission,'" and ruled that there would be a violation of federal law "if defendant's activities in New York amounted to engaging in th[at] business." United States v. Bah, No. S1 06 CRIM. 0243 LAK, 2007 WL 1032260, at *3 (S.D.N.Y. Mar. 30, 2007) (alteration in original, emphasis omitted). The district court thus assumed that because New York law on the subject prohibits "engag[ing] in the business of receiving money for transmission," federal law does likewise. That assumption was error.

At the conclusion of trial, Bah requested the following jury instruction on the scope of Section 1960:

> 1960 does not make it unlawful to receive money for transmission without a license. It makes it unlawful to engage in the business of receiving money for transmission. There was a violation of the statute only if defendant's activities amount[ed] to engaging in the business of receiving money for transmission, not if his activities constituted merely receiving money for

15

transmission.

The government objected to this instruction on the ground that it made insufficiently clear that Bah could be convicted if he engaged in the business of receiving money for transmission. The district court agreed: the problem was the final clause, which stated that there was no violation of the statute "if his activities constituted merely receiving money for transmission." The court found this clause potentially misleading, because "merely receiving money for transmission" could violate the statute if the receipt was sufficiently frequent and the volume sufficiently great to constitute a business.

Bah argued that no matter how often he received money in New York, any activity there was ancillary to his licensed New Jersey business and not unlawful, "especially because no money was ever transmitted in New York." Before the charging conference ended, Bah sought an instruction consisting of one sentence: "1960 does not make it unlawful to receive money for transmission without a license." The government objected on the same ground as before, and the district court rejected this formulation as well. Bah's first requested charge would have done him little good, and

16

we express no view on the denial of that request; the second requested charge went to the heart of the matter, and the denial of that request was error.[5]

The jury was instructed (accurately, as far as it went) "that the laws of New York State require that any person who engages in the business [of] receiving money for transmission or of transmitting money to be licensed as a money transmitter by the New York State Department of Banking," and that "the parties in this case have stipulated, in other words[,] they have agreed, that the defendant never obtained a license from the State of New York to engage in the business of receiving money for transmission or for transmitting money." But absent the one-sentence charge requested by Bah, the jury had no occasion to focus on whether Bah conducted an unlicensed

---

[5] Bah's initial request suffered from the same infirmity as the instruction given by the district court: it would have permitted the jury to convict if Bah was in the business of receiving money for transmission. To the extent that Bah's initial request inaccurately stated the law, it was consistent with the flawed analysis in the district court's in limine ruling, which was binding at trial. Thus, Bah initially sought the best instruction he could reasonably hope for given the district court's ruling. When the district court rejected that proposal, Bah requested a legally accurate instruction reflecting his understanding of the scope of Section 1960. Bah secured a ruling on that request and preserved the issue for appellate review.

17

business of <u>transmitting</u> money from New York.

Bah's requested charge constituted an accurate statement of the law: while New York law prohibits engaging in the unlicensed business of receiving money for transmission, federal law does not. Even viewing the district court's charge as a whole, we conclude that the jury was likely misled as to the scope of Section 1960 in the absence of Bah's requested language.

At oral argument on appeal, the government explained resourcefully [i] that Section 1960 prohibits "conduct[ing], control[ling], manag[ing], supervis[ing], direct[ing], or own[ing] all <u>or part</u> of an unlicensed money transmitting business," 18 U.S.C. § 1960(a) (emphasis added), and [ii] that receiving money is "part" of conducting a money transmitting business. However, even accepting the government's analysis, the receipt of money would be prohibited only if it is incident to "an unlicensed money transmitting business." Thus, it would be a <u>defense</u> to the federal charge (not a basis for conviction) that Bah received money in New York (in violation of the New York licensing laws) and transmitted the money via his licensed

18

business in New Jersey.[6]

**C. Harmless Error Analysis**

"An erroneous instruction, unless harmless, requires a new trial." Anderson v. Branen, 17 F.3d 552, 556 (2d Cir. 1994). "An error is harmless only if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." United States v. Quattrone, 441 F.3d 153, 177 (2d Cir. 2006) (internal quotation marks omitted).

Under the jury charge as given, Bah's defense at trial --that he received money in New York for transmission in New Jersey--amounted to a concession of guilt. Bah was entitled to an unqualified instruction that the receipt of money in New York for transmission from New Jersey was no violation of federal law. The proviso (emphasized in the charge) that Bah must have been engaged "in the business" of receiving

---

[6] An issue was raised at oral argument as to whether Bah receiving money in New York and transporting it to New Jersey would itself constitute unlawful transmission, because the statute prohibits unlicensed "transfers within this country." 18 U.S.C. § 1960(b)(2). So long as Bah (or his agents) maintained possession of any payments, the movement of the money across state lines would not itself violate the statute, because Section 1960 prohibits the "transfer" of money, not the transportation of money by an individual.

19

money for transmission did not repair the omission.

The charge sharply undermined Bah's argument that his activities in New York were ancillary to his New Jersey business. Defense counsel tried arguing to the jury several times that Bah could not be convicted for receiving money in New York, but the district court sustained the government's objections.

The prejudice was exacerbated by the emphasis placed by the government on particular evidence. For example, the government made much of the fact that $15,000 to $20,000 of the $50,000 to $60,000 Bah received weekly was collected in New York. But under Section 1960 it should not matter how much money Bah received in New York, unless he transmitted it in violation of New York law. Similarly, the government highlighted a stack of blank receipts found in the Bronx restaurant. But because the receipts were not evidence of transmission, they would not be decisive to a properly instructed jury.

The government argues in its brief that its "most direct[]" evidence consisted of "the essentially uncontradicted testimony of four of Bah's customers" who dropped off money in the Bronx that was later transferred to

Africa. But those witnesses did not testify as to how--or from where--the money was transmitted. The fact that the witnesses dropped off money that later arrived in Africa is not inconsistent with Bah's defense that he received money in New York for transmission from New Jersey. The existence of the New Jersey license thus makes this an unusual case.[7]

Much of the government's remaining evidence was not probative as to Bah's operation of an unlicensed money transmitting business in New York during the indictment period. For example, the government introduced bank records, correspondence, receipts, and business records that predated the time of the alleged violation of section 1960.

---

[7] Ordinarily, evidence that customers delivered money for transmission overseas, and that the money was in fact transmitted overseas, would be powerful evidence in a prosecution under Section 1960. But this was not an ordinary Section 1960 prosecution. No circuit court has addressed a case in which a defendant who operated a licensed, registered money transmitting business was charged with operating an unlicensed business in a neighboring state. Two cases from our Court are instructive as to the types of cases that are typically brought under the statute. In Velastegui, we analyzed New York law and held that the "agent of a licensee who transmits money directly to a foreign country . . . is operating a money transmitting business without a license as prohibited by section 1960." 199 F.3d at 595 (emphasis added). In United States v. Elfgeeh, 515 F.3d 100, 110 (2d Cir. 2008), we affirmed the convictions where the defendants knew they needed to obtain a license to transmit money, but never obtained a license in any state.

21

The government also introduced numerous records of money transfers from New Jersey, which were executed lawfully pursuant to Bah's New Jersey license. Bah could not properly have been convicted based on this evidence.

To prove a violation of Section 1960, the government was required to come forward with evidence that Bah was in the business of transmitting money from New York during the period charged in the indictment: January 1, 2002, up to and including August 21, 2006. The government introduced two kinds of evidence that would show such a violation: bank records showing that (from January 2002 through August 2002) B&S Bah Enterprises transferred more than $1.2 million through a Banco Popular branch in the Bronx; and spreadsheets and charts (from March 2002 through August 2002) bearing the address of the Bronx restaurant, with columns on senders' and recipients' names, a column headed "refunds," a column with codes for recipients in Africa, and lists of sums in United States dollars with names and contact information for individuals in Conakry, Guinea. These bank records, spreadsheets, and charts were probative evidence that Bah operated an unlicensed money transmitting business in New York.

22

However, Bah rebutted this evidence. He testified that the transfers from Banco Popular were to facilitate the sale of goods such as televisions, food, and oil, and that the Banco Popular account was never used to send to cash to overseas recipients. With respect to the spreadsheets, Bah testified that he listed transactions by dollar amount-- instead of by the quantity of good to be delivered--to account for fluctuations in currency exchange rates, so that overseas recipients would receive goods equal to the dollar value paid by United States customers.

There is reason to think that the jury found Bah's testimony credible: Bah was acquitted on the count that charged him with lying to government agents when he told them [i] that he never remitted money through his New York business and [ii] that he first began operating a money transmitting business in the summer of 2002. Bah contested this charge by testifying that his New York business only engaged in the import and export of goods. His acquittal suggests that the jury believed his testimony.

In order for the jury to have acquitted as to false statements while convicting as to money transmission, it seems more than likely that its verdict on money

transmission rested on something other than Bah transmitting money from New York.  That something, under the district court's charge, would have been Bah's receipt of money in New York for transmission from New Jersey.  In short, given the jury's verdict, we cannot conclude beyond a reasonable doubt that a properly instructed jury would have found Bah guilty.

"Where an instruction defining one of two alternative grounds is legally erroneous, a court must reverse unless it can determine with absolute certainty that the jury based its verdict on the ground on which it was correctly instructed."  United States v. Joseph, 542 F.3d 13, 18 (2d Cir. 2008).  In this case, the district court's instruction left the jury free to convict for either of two activities prohibited by New York Banking Law § 650(2)(a)(1): "[i] engag[ing] in the [unlicensed] business of receiving money for transmission or [ii] transmitting the same." Given the strength of the government's evidence as to receipt (and Bah's concession that many customers left money in New York for him to transmit from New Jersey), the jury had no need or reason to reach the decisive (and more difficult) question of whether Bah transmitted money from

New York.

The jury charge allowed Bah to be convicted for lawful activity incident to his New Jersey business. Because we are not "absolute[ly] certain[]" that the jury found Bah guilty for the appropriate reason, Bah is entitled to a new trial.

**II**

Bah challenges the grant of the government's motion in limine to preclude evidence that he was licensed to conduct a money transmitting business in New Jersey. "We review a district court's evidentiary rulings for abuse of discretion, and will reverse only if we find that there was a violation of a substantial right." United States v. Ebbers, 458 F.3d 110, 122 (2d Cir. 2006).

The district court precluded the introduction of evidence of Bah's New Jersey license after concluding that Section 1960 and New York Banking Law § 650 both impose strict liability on the operator of an unlicensed money transmitting business, and that neither statute requires a defendant to know that he must obtain a license. Bah does not challenge these legal conclusions. Rather, he argues

25

that the ruling erroneously prevented him from arguing that he "reasonably believed" his limited activities in New York did not constitute operating a money transmitting business in that state.

The district court did not abuse its discretion in ruling, before trial, that Bah could not offer evidence of his New Jersey license. If the presentation of evidence had been limited to Bah's money transmitting activities in New York, evidence of Bah's New Jersey license would not have supported a viable defense.[8]

We do not hold, however, that the district court would have erred had it denied the government's motion. The district court's evidentiary ruling responded to arguments premised on each party's theory of how to try the case, which were in turn influenced by the district court's expressed view of what the government had to prove. This

---

[8] Having prevailed on its in limine motion to preclude Bah from introducing evidence of his New Jersey license, the government introduced reams of bank records from New Jersey showing money transfers related to Bah's New Jersey business. By introducing this evidence, the government arguably opened the door to Bah introducing evidence of his New Jersey license, but this argument was not raised at trial or on appeal. Cf. United States v. Stewart, 433 F.3d 273, 308 (2d Cir. 2006); United States v. Beers, 189 F.3d 1297, 1300 (10th Cir. 1999).

opinion alters the case, and re-conceives the nature of the offense the government can prosecute.  The court may wish to reconsider its ruling if the government elects to conduct a second trial.

**III**

Bah contends that the district court improperly permitted the government to cross-examine one of his character witnesses about a letter from a former customer accusing him of fraud.

Federal Rule of Evidence 404(a)(1) permits a defendant to offer character evidence.  If a defendant chooses to introduce such evidence, the government may question the defendant's witnesses regarding "relevant specific instances of conduct."  Fed. R. Evid. 405(a).  "We review the district court's decision to allow the question[ing] for abuse of discretion, bearing in mind that once a defendant offers character testimony, the prosecution is afforded substantial latitude to rebut such evidence."  United States v. Reich, 479 F.3d 179, 190 (2d Cir. 2007) (internal quotation marks, citations and alteration omitted).

Bah called three character witnesses.  One of them,

27

Amadou Diallo, testified that Bah had a reputation for truthfulness in the community, and cited an instance in which Bah helped resolve a situation between Diallo and Bah's brother.  On cross-examination, the district court permitted the government--over Bah's objection--to question Diallo about a letter in which a former customer accused Bah of fraud.  Diallo testified that he was unaware of the accusation and that it did not impact his view of Bah or his reputation in the community.

Bah cites the Eighth Circuit's decision in United States v. Monteleone, 77 F.3d 1086 (8th Cir. 1996), for the proposition that a prosecutor may only cross-examine a character witness based on events "likely to have become a matter of general knowledge, currency or reputation in the community," id. at 1090 (internal quotation marks omitted). In Monteleone, the character witness was cross-examined about the defendant's alleged perjury before a grand jury investigating a drug crime.  Id.  Because grand jury proceedings are required by law to be kept secret, Monteleone ruled that the government lacked a good faith basis for believing that the defendant's alleged perjury was likely to have been known in the witness's community.  Id.

28

_Monteleone_, of course, is not binding in our circuit, but even if it were, this case is distinguishable for three reasons. First, the evidence presented on cross-examination did not derive from a secret proceeding; to the contrary, the author of the letter expressed a desire that Bah's actions be widely publicized to other customers and the Better Business Bureau. Second, the challenged evidence did not involve criminal conduct, but dishonesty in Bah's business dealings--information closely related to the subject of Diallo's direct testimony, and far less inflammatory (and potentially prejudicial) than the evidence at issue in _Monteleone_. Third, we have previously observed that the Eighth Circuit has limited _Monteleone_ to cases involving reputation evidence and that it has been more permissive in admitting evidence to impeach opinion testimony. _See_ _Reich_, 479 F.3d at 190-91. In this case, Diallo testified as to his personal opinion of Bah. For these reasons, _Monteleone_ is unpersuasive.

In light of the "substantial latitude" afforded the government to rebut character witness testimony offered by the defense, the district court did not abuse its discretion in permitting the government to question Diallo about the

29

complaint against Bah.

## IV

Bah's final challenge is to the district court's denial of funds to fly thirteen defense witnesses from overseas to testify at trial, and to fly Bah's counsel overseas to depose three witnesses. Bah argues, inter alia, that: [i] he was denied his Due Process right to present a complete defense, see California v. Trombetta, 467 U.S. 479 (1984); [ii] he was denied his Sixth Amendment rights to compulsory process and confrontation of witnesses, see Howard v. Walker, 406 F.3d 114 (2d Cir. 2005); [iii] he was denied equal protection of the laws because of his inability to pay for a defense, see Ake v. Oklahoma, 470 U.S. 68 (1985); and [iv] he was denied his right under the Criminal Justice Act ("CJA") to funding for "services necessary for adequate representation," 18 U.S.C. § 3006A(e)(1).

A district court may authorize the expenditure of funds exceeding $500 under the CJA only when "necessary for adequate representation." 18 U.S.C. § 3006A(e)(1)-(2); see also United States v. Durant, 545 F.2d 823, 827 (2d Cir. 1976) (discussing necessity requirement for requests for CJA

funding). A similar necessity requirement applies to requests under Federal Rule of Criminal Procedure 15, which governs taking depositions in criminal trials, and Federal Rule of Criminal Procedure 17(b), which directs district courts to issue subpoenas on behalf of indigent defendants and provides for payment of costs for those witnesses.

The decision to grant or deny funding under these rules is committed to the discretion of the district court. See United States v. Salameh, 152 F.3d 88, 118 (2d Cir. 1998) (explaining that a district court judge is "obligated to exercise his discretion" in determining whether funds are necessary under the CJA (internal quotation marks omitted)); United States v. Whiting, 308 F.2d 537, 541 (2d Cir. 1962) ("[A] motion made under Rule 15 is addressed to the discretion of the trial court.").

Bah failed to establish that the witnesses were necessary for his defense. The testimony Bah wished to elicit would, at best, have established that the particular witnesses called from overseas did not work with Bah in a money transmitting business prior to the date (September 23, 2002) that Bah registered his New Jersey business with the federal government. Such evidence would not have dissuaded

31

a jury from finding that Bah operated an unlawful business in that time with other people.  Further, the evidence lacked probative value with respect to Bah's activities after September 23, 2002.

Bah's request also lacked specificity as to: whether the witnesses had agreed to fly to this country, whether they could obtain visas, what countries they would be flying from, why the testimony of all thirteen witnesses was necessary, or what their dealings with Bah were.  Similarly, Bah provided no estimate of expense.  See United States v. Knox, 540 F.3d 708, 717-19 (7th Cir. 2008) (affirming denial of funding request under CJA and Rule 15 for flying attorney to West Africa to investigate and depose witnesses because request and cost estimate were not sufficiently specific).  The district court did not abuse its discretion in denying Bah's unqualified request for funds.

**CONCLUSION**

Because the district court erred in refusing to give Bah's requested charge on the scope of Section 1960, Bah's conviction is vacated, and the case is remanded for a new trial.

32