22-1360-cr (L)
*United States v. Williams-Dorsey*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of November, two thousand twenty-three.

PRESENT:
> RICHARD C. WESLEY,
> DENNY CHIN,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

_____

United States of America,

*Appellee*,

v.                                                                22-1360-cr, 22-1459-cr,
                                                                      22-1461-cr

Davonte Williams-Dorsey, AKA Davonte Williams-Dorsey,

*Defendant-Appellant*.

_____


FOR APPELLEE:                    NICHOLAS COMMANDEUR, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

FOR DEFENDANT-APPELLANT:          PETER J. TOMAO, Garden City, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Davonte Williams-Dorsey appeals from the district court's judgment of conviction, entered on June 27, 2022. Following a four-day trial, at which Williams-Dorsey represented himself *pro se*, a jury convicted Williams-Dorsey of: (1) conspiracy to distribute and to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; (2) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). These convictions relate to Williams-Dorsey's role in the sale of approximately twenty kilograms of methamphetamine to a government confidential source (hereinafter, the "CS") on January 8, 2020, in Syracuse, New York, where Williams-Dorsey was arrested in possession of a loaded 9mm handgun. The evidence at trial included, *inter alia*, the testimony of co-conspirator Tyshawn Logan, who explained how Williams-Dorsey directed him to retrieve the drugs from California and bring them to Syracuse. Williams-Dorsey was sentenced principally to 180 months' imprisonment.

Williams-Dorsey asserts two overarching arguments on appeal. First, he argues that the district court violated his constitutional rights to a fair trial and due process because of the manner in which the trial was conducted, as well as the substantive rulings with respect to his trial preparation and the preclusion of his proposed defenses. Second, he argues that the district court erred in admitting evidence of prior bad acts at trial. We assume the parties' familiarity with the

underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I. Fair Trial and Due Process

"[A] criminal defendant is entitled by the Constitution to a meaningful opportunity to present a complete defense." *Scrimo v. Lee*, 935 F.3d 103, 112 (2d Cir. 2019); *see also Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the [government's] accusations."). "Repeated interference with the defense case may work to deprive [a] defendant of a fair trial." *United States v. Filani*, 74 F.3d 378, 386 (2d Cir. 1996). However, "a criminal defendant's right to present evidence is not boundless; it may be limited by evidentiary and procedural rules designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Scrimo*, 935 F.3d at 112 (internal quotation marks and citation omitted). We examine the entire record to determine whether a defendant received a fair trial. *United States v. Mickens*, 926 F.2d 1323, 1327 (2d Cir. 1991). "[T]he cumulative effect of a trial court's errors, even if they are harmless when considered singly, may amount to a violation of due process requiring reversal of a conviction." *United States v. Al-Moayad*, 545 F.3d 139, 178 (2d Cir. 2008).

Williams-Dorsey contends that the district court deprived him of a fair trial by improperly: (i) preventing him from preparing adequately for trial; (ii) precluding him from presenting entrapment and duress defenses; and (iii) interfering with his presentation of evidence and arguments at trial. We address each claim in turn.

3

### a. Trial Preparation

Williams-Dorsey asserts that several of the district court's rulings prevented him from adequately preparing for trial as a *pro se* defendant. As set forth below, we conclude that each of these challenges is without merit.

### 1. Request for an Investigator

Williams-Dorsey asserts that the district court improperly denied his request for funds for an investigator under the Criminal Justice Act.

The Criminal Justice Act ("CJA") authorizes funding for investigative services upon a finding "that the services are necessary . . . ." 18 U.S.C. § 3006A(e)(1). The defendant requesting funds "has the burden of satisfying the district court that the services are reasonably necessary," and "must articulate a reasonable basis for the requested services." *United States v. Sanchez*, 912 F.2d 18, 22 (2d Cir. 1990) (alteration adopted) (internal quotation marks and citation omitted). The district court is entitled to require a defendant to submit specific evidence before appointing an investigator. *Id.* (holding that the district court had discretion to deny funds for investigative services after defendant failed to provide an affidavit explaining need). We review a district court's decision to deny such funding for abuse of discretion. *United States v. Bah*, 574 F.3d 106, 118 (2d Cir. 2009).

Williams-Dorsey first requested funds for an investigator in a letter filed January 4, 2021, stating that "[t]here's interesting matters that must be investigated in order for me to be awarded a fair opportunity at trial." App'x at 164. On April 20, 2021, he filed another request, listing twenty-five witnesses who "needed to be interviewed and reasoning why."[1] *Id.* at 179–80. After

---

[1] Williams-Dorsey's terse explanations for needing to interview these witnesses were vague and generalized. For example, for about a dozen of the proposed witness interviews, Williams-Dorsey only indicated that the purpose of the interview was their "role in investigation." App'x at 180.

reviewing his request, the magistrate judge directed Williams-Dorsey to file a more detailed motion, identifying "what specific resource [he was] looking for with respect to the witnesses," and "spell[ing] out more specifically how [each] witness has relevant information and how that's relevant at this trial." *Id.* at 232, 236–37. Williams-Dorsey did not file a supplemental motion as directed by the court. At a final pretrial conference, the district court found that Williams-Dorsey had "not compl[ied] with the direction of the court as to why these witnesses [were] necessary," and therefore declined to authorize the funds for an investigator. *Id.* at 295–96.

In short, although Williams-Dorsey provided the district court with a list of potential witnesses and a vague reference to their anticipated testimony, he did not sufficiently explain why their testimony or the investigative services were reasonably necessary, even after the court requested that specific information. Accordingly, we conclude that the district court did not abuse its discretion in denying Williams-Dorsey's request for CJA funds to hire an investigator.

### 2. Review of Discovery

Williams-Dorsey also argues that he was not afforded adequate time to review certain discovery materials, and that the district court's enforcement of a protective order in place violated his discovery rights under Rule 16 of the Federal Rules of Criminal Procedure.

Although the government must allow a defendant to inspect or copy certain documents that it intends to use at trial, *see* Fed. R. Crim. P. 16(a)(1)(E), a district court may, "for good cause, deny, restrict, or defer discovery or inspection" in the form of a protective order, *see* Fed. R. Crim. P. 16(d)(1). The "entire management of discovery," including the issuance and enforcement of protective orders, is "within the [d]istrict [c]ourt's broad discretion." *United States v. Loera*, 24 F.4th 144, 155 (2d Cir. 2022). We have found that it is within the district court's discretion, for example, to "require . . . approval before [p]rotected [d]iscovery could be shown to persons not

5

part of defense counsel's team," or to "permit[] the Government to defer disclosure of various discovery documents until close to the trial." *Id.* (rejecting appellant's argument that the court's protective order denied him the ability to present a defense).

Here, the district court entered a protective order, which authorized the government to designate certain discovery as "Protected Materials [that] may be shown to and reviewed with any incarcerated Defendant, but such incarcerated Defendant may not maintain a copy of the Protected Materials while incarcerated."[2] App'x at 40–41. Williams-Dorsey was incarcerated pretrial, and on December 21, 2020, the district court approved his motion to proceed *pro se*. In a letter filed with the court on February 5, 2021, Williams-Dorsey requested that he be "afforded the ability to review the protected discovery."[3] *Id.* at 166. The district court promptly responded to this request, ordering that Williams-Dorsey be brought to the courthouse to review the protected materials for four hours. The district court ordered three additional review sessions at the courthouse before trial, totaling approximately twelve additional hours.

Although Williams-Dorsey argues that he did not have sufficient time to review the protected discovery materials, he does not identify any particular document or evidentiary item in the Rule 16 discovery that he needed more time to review. In short, on this record, there is no basis to conclude that the district court abused its discretion in determining that the additional steps taken to facilitate Williams-Dorsey's review of the Protected Materials were sufficient to allow

---

[2] The protective order defines "Protected Materials" as "discovery materials that (i) may reveal the identity of witnesses; (ii) might reveal sensitive, non-public information regarding individuals not involved in the crimes alleged; and (iii) are otherwise protected from disclosure by federal statute." App'x at 40–41. Under the order, the government had the authority to designate the discovery materials as protected. Williams-Dorsey did not oppose the entry of the protective order in the district court, nor does he argue on appeal that the protective order was not properly entered.

[3] We note that the protective order did not affect Williams-Dorsey's ability to maintain in his jail facility discovery materials that were not designated as "Protected Materials."

6

him to prepare his defense. Moreover, Williams-Dorsey has failed to identify how any additional time for such review would have impacted his performance during the trial or affected the jury's verdict. Therefore, even assuming *arguendo* that there was an abuse of discretion with respect to providing Williams-Dorsey more time to review the Protected Materials, he has failed to demonstrate any prejudice from the effects of the protective order that would warrant a new trial. *See United States v. Crisona*, 416 F.2d 107, 115 (2d Cir. 1969) (holding that error by district court in discovery matter was harmless).

Williams-Dorsey's related argument, that he did not have sufficient time to review materials disclosed by the government pursuant to the Jencks Act, 18 U.S.C. § 3500, is similarly unavailing. As a threshold matter, the district court lacks the authority to order the government to disclose Jencks material "until [the] witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a); *see also In re United States*, 834 F.2d 283, 287 (2d Cir. 1987) (holding that district court has "no inherent power to modify or amend the provisions of [the Jencks] Act"). As an accommodation, the government produced the Jencks material one week prior to trial. On appeal, Williams-Dorsey points to one instance where he asked for additional time to review Jencks material—namely, the statements and reports of the government's first witness, Agent Alicia Scanlon. However, after Williams-Dorsey's standby counsel told the district court that he had not finished reviewing Agent Scanlon's Jencks material, the district court arranged for nearly an hour of extra review before trial the next morning and told Williams-Dorsey, "[i]f you need a little more time, let me know." App'x at 510. When Williams-Dorsey later asked for an additional "few moments to review," the district court agreed. *Id.* at 515. The district court then confirmed with Williams-Dorsey that he was ready before resuming trial. Williams-Dorsey points to no other specific instance where he requested additional time to review a witness's Jencks material prior to

7

his cross-examination. Therefore, we discern no abuse of discretion in the district court's management of William-Dorsey's need to review the Jencks material before cross-examination of government witnesses.

In any event, a challenge to the verdict based on a defendant's ability to effectively use Jencks material is subject to harmless error analysis on appeal. *See United States v. Jackson*, 345 F.3d 59, 77 (2d Cir. 2003). Indeed, even when the government fails to produce the Jencks Act material, a defendant is not entitled to relief unless there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Nicolapolous*, 30 F.3d 381, 383–84 (2d Cir. 1994) (internal quotation marks and citation omitted). Here, Williams-Dorsey has made no showing that, with additional time to review and use the Jencks material produced to him, his questioning of any witness or the result of the trial would have been different.[4]

### b. Limitations on Defenses

Williams-Dorsey argues that the district court improperly precluded him from raising the defenses of duress and entrapment. We disagree and conclude that the district court correctly ruled that these defenses were not available to Williams-Dorsey as a matter of law.[5]

---

[4] Williams-Dorsey's related argument that he was deprived of the effective assistance of standby counsel as it relates to the review of discovery, as well as other phases of the case, is also unpersuasive. The record reflects that Williams-Dorsey was assisted by standby counsel with respect to both pretrial and trial matters, and we find no basis to conclude that the district court improperly deprived Williams-Dorsey of the effective assistance to such counsel.

[5] As the government notes, we have held that a district court's decision "not to allow the presentation of a defense" is reviewed *de novo*. *See United States v. Markle*, 628 F.3d 58, 62 (2d Cir. 2010); *United States v. Kopp*, 562 F.3d 141, 145 (2d Cir. 2009) (per curiam). However, in some cases, we have also applied an "abuse of discretion" standard to review the factual basis of a proffered defense. *See, e.g., United States v. Hurtado*, 47 F.3d 577, 584–85 (2d Cir. 1995). We need not further explore this issue here because we conclude, even under *de novo* review, that the district court properly determined that there was an insufficient factual basis to support either a duress or an entrapment defense.

A district court "may preclude a defendant from presenting a defense when 'the evidence in support of such a defense would be legally insufficient.'" *United States v. Williams*, 389 F.3d 402, 404 (2d Cir. 2004) (quoting *United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir. 1990)). Evidence in support of a defense is insufficient as a matter of law if the defendant cannot make a *prima facie* showing as to each element of that defense. *See Villegas*, 899 F.2d at 1343; *United States v. Mitchell*, 725 F.2d 832, 837 (2d Cir. 1983) ("A defendant must present some evidence on all of the elements of the defense.").

To set forth a duress defense, a defendant must establish three discrete elements: "(1) a threat of force directed at the time of the defendant's conduct; (2) a threat sufficient to induce a well-founded fear of impending death or serious bodily injury; and (3) a lack of reasonable opportunity to escape harm other than by engaging in the illegal activity." *United States v. Gonzalez*, 407 F.3d 118, 122 (2d Cir. 2005). "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). "The defendant has the burden of showing inducement and, if inducement is shown, the prosecution has the burden of proving predisposition beyond a reasonable doubt." *United States v. Cromitie*, 727 F.3d 194, 204 (2d Cir. 2013) (citations omitted).

The government moved *in limine* to preclude Williams-Dorsey from asserting a duress defense. The district court then conducted a pretrial evidentiary hearing, at which Williams-Dorsey testified that he had been held captive in Mexico and that his captor told him that he would need to complete a drug deal in the United States in exchange for his release. Williams-Dorsey explained that he (Williams-Dorsey) arranged for another individual to fly down to Mexico to be held as collateral while he completed the drug deal. Thus, Williams-Dorsey testified that he

engaged in the twenty-kilogram methamphetamine transaction in Syracuse so the hostage could be released and he (Williams-Dorsey) "could be free of any future harm or captivity." App'x at 395. Following the hearing, the district court precluded Williams-Dorsey from a duress defense, explaining:

> Based on the testimony presented at the hearing, the Court finds that Defendant has failed to present "some" evidence of every element of his duress defense. Most importantly, he has not presented any evidence that he did not have a reasonable opportunity to escape the threatening situation either by fleeing or by seeking the intervention of the appropriate authorities. In fact, quite the opposite is true. Defendant had multiple opportunities to seek the intervention of the appropriate authorities before he engaged in the drug transaction on January 8, 2020, in Syracuse, New York. Defendant flew through several airports in the United States between his arrival on January 2, 2020, and January 8, 2020, and, by his own admission, never notified any official that he had been held in Mexico against his will or that in order to be free of [his captor's] threat to kill him, he had to engage in the drug transaction and that, unless he engaged in the drug transaction and returned to Mexico, [the individual detained in his place] would be killed.

*Id.* at 420.

We conclude that, on this record, the district court properly precluded the duress defense. We have emphasized that "[a] defendant must make some showing on each element [of the duress defense], including the element that the defendant lacked a reasonable means to escape the threatening conduct 'by seeking the intervention of the appropriate authorities.'" *Gonzalez*, 407 F.3d at 122 (quoting *United States v. Bakhtiari*, 913 F.2d 1053, 1058 (2d Cir. 1990)). As the district court explained, even assuming *arguendo* that the jury credited Williams-Dorsey's version of the events leading up to the drug transaction, he could not demonstrate that he lacked reasonable opportunity to escape the threatened harm by alerting law enforcement authorities in the United States prior to the drug transaction in Syracuse. *See United States v. Alicea*, 837 F.2d 103, 106–07 (2d Cir. 1988) (affirming the preclusion of duress defense by two drug couriers where, even though they claimed they were being watched by their captors during the transportation of the drugs and that their family had been threatened, they had the opportunity to alert customs officials at the

10

airport); *Bakhtiari*, 913 F.2d at 1056–58 (affirming the preclusion of a duress defense where, even though the defendant alleged that Iranian government officials threatened to harm his family, "th[e] evidence was insufficient to establish that [the defendant] took reasonable steps to escape the threatened harm or to alert the proper authorities").[6] Accordingly, the district court correctly held that Williams-Dorsey was not entitled to present a duress defense to the jury.

We reach the same conclusion as to the entrapment defense. Williams-Dorsey's argument that he was induced to participate in the drug transaction by the CS is belied by uncontroverted evidence that he became involved in the scheme before his first interaction with the CS. Therefore, Williams-Dorsey could not establish government inducement to commit the crime, a requisite element of an entrapment defense. *See United States v. Pilarinos*, 864 F.2d 253, 256 (2d Cir. 1988) (holding that district court properly precluded an entrapment defense where there was no evidence that the defendant was induced to commit the charged crimes). Moreover, even if Williams-Dorsey could satisfy the inducement requirement, there was uncontradicted evidence of his predisposition to commit the crimes, including, *inter alia*, evidence of prior drug transactions with co-conspirator Logan (discussed *infra*). *See Hurtado*, 47 F.3d at 585 ("If the government . . . presents uncontradicted proof of predisposition, the entrapment defense is precluded as a matter of law.").

In sum, because the evidence in support of the duress and entrapment defenses was insufficient to satisfy the requisite elements of either defense, the district court properly precluded those defenses as a matter of law.

---

[6] The district court also separately concluded that the duress instruction was unwarranted because Williams-Dorsey had recklessly or negligently placed himself and the other individual allegedly held as a hostage in a position where it was probable that Williams-Dorsey would be subject to duress. **[A 421]** *See United States v. Agard*, 605 F.2d 665, 667 (2d Cir. 1979) ("[A duress] claim will not constitute a valid legal excuse when the defendant recklessly or negligently placed himself in a situation in which it was probable that he would be subject to duress.") (citations omitted). However, we need not address this alternative ruling.

### c. Trial Management

Williams-Dorsey further contends that the district court improperly, *inter alia*, interrupted his opening statement, his cross-examination of the government's witnesses, and his summation. In doing so, according to Williams-Dorsey, "[the district judge] repeatedly injected himself into trial in front of the jury in a way that not only systematically undermined [his] ability to present his case but unmistakably portrayed to the jury that the judge believed what [he] said lacked any validity." Appellant's Br. at 11–12. We disagree.

We review trial-management claims for abuse of discretion. *United States v. Yakobowicz*, 427 F.3d 144, 149–50 (2d Cir. 2005). "The trial-management authority entrusted to district courts includes the discretion to place reasonable limits on the presentation of evidence." *United States v. Quattrone*, 441 F.3d 153, 183 (2d Cir. 2006) (internal quotation marks and citation omitted). Moreover, "[a] trial court may ask questions for such purposes as clarifying ambiguities, correcting misstatements, or obtaining information needed to make rulings." *United States v. Messina*, 131 F.3d 36, 39 (2d Cir. 1997) (internal quotation marks and citation omitted). As we have explained, "while the district judge is more than a moderator or umpire and has an active responsibility to see that a criminal trial is fairly conducted, his participation during trial—whether it takes the form of interrogating witnesses, addressing counsel, or some other conduct—must never reach the point at which it appears clear to the jury that the court believes the accused is guilty." *United States v. Robinson*, 635 F.2d 981, 984 (2d Cir. 1980) (internal quotation marks and citations omitted). On review, we must "examine the entire record and attempt to determine whether the conduct of the trial has been such that the jurors have been impressed with the trial judge's partiality to one side to the point that this became a factor in the determination of the jury." *United States v. Guglielmini*, 384 F.2d 602, 605 (2d Cir. 1967).

12

Here we recognize that, unlike in most trials, the district court interrupted Williams-Dorsey numerous times, including during his jury addresses and questioning of witnesses. However, the district court faced the difficult task of managing a criminal trial with a *pro se* defendant who was frequently making improper and baseless arguments or comments in front of the jury and asking questions on cross-examination that were repetitive, irrelevant, or otherwise improper. Under these particular circumstances, the interruptions reflected the proper exercise of the district court's discretion to fulfill its "responsibility to see that [the] criminal trial [was] fairly conducted," *Robinson*, 635 F.2d at 984 (internal quotation marks and citation omitted), including ensuring that the jury was not distracted or confused by improper arguments and comments. For example, in his opening statement, Williams-Dorsey stated, "I had many witnesses, I won't call them," and also told the jury that "[t]he government will hide many things," show the jury "fabricated reports," and withhold evidence of another individual involved in the offense. App'x at 500–02. The district court's instruction to the jury, that Williams-Dorsey would be able to put "[a]nything that is legally admissible . . . into evidence," was thus necessary to clarify to the jury that it was not being unfairly deprived of its ability to hear all relevant and admissible evidence.[7] *Id.* at 502. Moreover, the limitations on cross-examination often occurred after the district court had already allowed questioning on a particular topic or after Williams-Dorsey engaged in improper commentary in front of the jury. For instance, although Williams-Dorsey asserts that the district court limited his questioning of Logan about a prior arrest on cross-examination, that argument ignores the fact that Williams-Dorsey had already asked Logan a series of questions regarding the prior arrest. In addition, after the district court curtailed a series of improper and argumentative questions during

---

[7] At another point during the trial, Williams-Dorsey showed a manila folder to the jury upon which he had written "government misconduct" in bold letters while questioning witnesses.

13

Logan's cross-examination, Williams-Dorsey stated to the judge, in front of the jury: "I have a feeling you don't want me here questioning him or any other witness the government offers. I'm pretty sure I'm not the only one that feels that way in this courtroom." *Id.* at 825–27. Then Williams-Dorsey told the jury, "Every time you guys leave the courtroom, just wonder what happens, just wonder what justice is achieved here. That's why I'm *pro se*." *Id.* at 827.[8]

In sum, viewing this record as a whole, we conclude that the district court's interruptions, comments, and limitations on questioning during the trial were within its broad discretion to manage the criminal trial and, in any event, did not indicate any type of partiality that "became a factor in the determination of the jury." *Guglielmini*, 384 F.2d at 605. Accordingly, we find no basis to disturb the jury's verdict based on the district court's management of the trial.

## II. Prior Acts Evidence

Williams-Dorsey argues that the district court erred in admitting evidence, offered through Logan and several law enforcement witnesses, regarding three prior incidents in which Williams-Dorsey was allegedly involved in smuggling—two relating to illegal drugs and one relating to undocumented immigrants. Williams-Dorsey contends that these incidents were inadmissible prior bad acts, *see* Fed. R. Evid. 404(b), and were irrelevant and highly prejudicial, *see* Fed. R. Evid. 403.

The government moved *in limine* to admit, under Fed. R. Evid. 404(b), evidence regarding: (1) an April 2018 vehicle stop in Oklahoma in which law enforcement officials seized from Williams-Dorsey and Logan $100,000 in cash, less than one week after Williams-Dorsey drove from Mexico to the United States; (2) an October 2018 vehicle stop in Indiana in which law

---

[8] To the extent Williams-Dorsey specifically challenges the district court's denial of his request to recall the case agent, we conclude that the district court did not abuse its discretion in making that determination in light of Williams-Dorsey's failure to sufficiently articulate what additional relevant testimony would be elicited if he was permitted to do so.

enforcement officials seized from Williams-Dorsey and Logan approximately five pounds of marijuana; and (3) a February 2019 vehicle stop in Arizona, when Williams-Dorsey was driving a car with several Guatemalan citizens who were present in the United States illegally, which led to Williams-Dorsey's arrest on a federal charge.[9]

The government argued to the district court that evidence of these three prior acts "was relevant to show [Williams-Dorsey's] knowledge and intent to engage in the illegal smuggling activity involved in this case." App'x at 283. It also argued that the April and October 2018 vehicle stops involving alleged narcotics trafficking "were relevant to demonstrate the relationship of trust" between Williams-Dorsey and co-conspirator Logan. *Id.* After hearing arguments on the motion, the district court ruled that the government could use the prior acts evidence in its case-in-chief.

We review a district court's decision to admit or exclude evidence for abuse of discretion. *See United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021). We will reverse such a ruling only when it is "manifestly erroneous" or "arbitrary and irrational." *United States v. Dawkins*, 999 F.3d 767, 788 (2d Cir. 2021) (internal quotation marks and citations omitted).

As a general matter, although evidence of "any other crime, wrong, or act" cannot be used to prove the defendant's propensity to commit the crime charged, it is admissible to show, *inter alia*, intent, knowledge, or absence of mistake. *See* Fed. R. Evid. 404(b)(1), (2); *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017). Under this Circuit's "inclusionary approach," evidence of a prior act, offered "for any purpose other than to show a defendant's criminal propensity," is admissible so long as it is relevant to an issue at trial and the probative value of the evidence is not

---

[9] Williams-Dorsey subsequently pled guilty to the misdemeanor offense of assisting individuals after they had illegally entered the United States to avoid apprehension, in violation of 8 U.S.C. § 1325(a)(1) and 18 U.S.C. § 3.

substantially outweighed by the risk of unfair prejudice under Federal Rule of Evidence 403. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (citations omitted). For example, a district court "can . . . admit evidence of prior acts as probative of knowledge and intent if the evidence is relevant to the charged offense, *i.e.*, if there is a similarity or connection between the charged and uncharged acts." *Dupree*, 870 F.3d at 76 (citing *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006)). It is likewise "within the [district] court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993).

We conclude that the district court did not abuse its discretion in admitting evidence regarding the April and October 2018 vehicle stops involving Logan and Williams-Dorsey. Logan testified that the money seized in the April 2018 vehicle stop was payment for approximately ten kilograms of cocaine that he and Williams-Dorsey had transported from California to New York, and that the marijuana seized in the October 2018 vehicle stop had been picked up by Williams-Dorsey in California. This evidence was probative of Williams-Dorsey's knowledge and intent to engage in a conspiracy with Logan involving drugs from California as charged in this case, and to rebut Williams-Dorsey's argument that he was an unwitting victim of an improper government buy-bust operation.[10] *See also United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) ("Where . . . defendant does not deny that he was present during a narcotics transaction but simply denies wrongdoing, evidence of other arguably similar narcotics involvement may . . . be admitted to

---

[10] Contrary to Williams-Dorsey's contention, his knowledge and intent were disputed issues at trial, and he repeatedly argued to the jury that he lacked such knowledge or intent. *See, e.g.*, App'x at 912–13 (highlighting in summation that the second element of the conspiracy count is "knowingly, willingly and with intent" and arguing to the jury that "the facts are right in front of your face and the defendant . . . had no knowledge").

16

show knowledge or intent."); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("[E]vidence that [defendant] had previously engaged in narcotics trafficking with [co-defendant] is highly probative of [defendant's] intent to enter another drug conspiracy with the same co-conspirator, and to rebut [defendant's] defense of innocent association.").  The evidence of these two prior incidents also was probative to show how the criminal relationship of trust developed between Williams-Dorsey and Logan in the drug trade. *See United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir. 1992) (upholding admission of evidence of prior drug transactions involving the same parties to show "a relationship of trust between the parties and that they knew about transactions of this type" (internal quotation marks omitted)).

Williams-Dorsey suggests that this alleged "smuggling" evidence lacked probative value because it "did not show any *international* 'smuggling' of drugs" and "[t]he offenses charged in the indictment was [sic] limited to a single buy-bust deal in Syracuse rather than a smuggling offense."  Appellant's Br. at 70–71 (emphasis added).  However, the probative value of this evidence, in terms of Williams-Dorsey's knowledge regarding the nature of the transaction in Syracuse, as well as how his relationship of trust developed with Logan, was not contingent upon showing that there was an international aspect to any of these prior incidents of alleged drug trafficking activity with Logan.  Nor was the probative value substantially undermined by the absence of identical circumstances surrounding the facts of the prior acts and the charged crime. *See, e.g.*, *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) ("Where [Rule 404(b)] evidence is offered for the purpose of establishing the defendant's knowledge or intent, we require that the government identify *a similarity or connection* between the two acts that makes the prior act relevant to establishing knowledge of the current act." (emphasis added) (internal quotation marks and citation omitted)).  In short, the district court did not abuse its discretion in determining

that the evidence regarding the April and October 2018 vehicle stops was sufficiently similar to the charged conduct, and adequately connected to the development of the criminal relationship between Williams-Dorsey and Logan, to support the government's introduction of that evidence at trial under Rule 404(b).

Although the district court did not explicitly conduct the requisite balancing under Rule 403, that error does not provide a ground for reversal here because Williams-Dorsey makes no persuasive argument that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice, especially where the Rule 404(b) evidence did not involve conduct more serious or inflammatory than the charged crimes. *See United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000). Moreover, the district court minimized any potential prejudice by providing the jury with a limiting instruction regarding the proper consideration of that evidence. *See Dupree*, 870 F.3d at 77 ("Although the district court could have conducted a more explicit analysis of the Rule 403 balancing test, there was no harmful error because . . . [the co-conspirator's] testimony was probative as to disputed, relevant issues and was not unduly prejudicial in light of the similarity of the conduct and the contemporaneous limiting instruction.").[11]

Finally, with respect to the admission of the February 2019 vehicle stop in Arizona involving the transportation of individuals who had entered the United States illegally, Williams-Dorsey argues that the district court erred because the evidence lacked probative value for any proper purpose, especially because it did not involve narcotics and Logan was not involved in the

---

[11] Williams-Dorsey contends that the limiting instruction was insufficient because it was not given to the jury contemporaneously with the admission of the evidence. However, he did not request a contemporaneous instruction, and there is no basis to conclude that the jury was unable to follow the limiting instruction given by the district court as part of the final charge before their deliberations. *See United States v. Paternina-Vergara*, 749 F.2d 993, 999 (2d Cir. 1984) ("[I]n the absence of a request by defense counsel, the lack of a contemporaneous limiting instruction was not error at all, much less a ground for reversal.").

offense.  However, we need not address that argument because, even assuming *arguendo* that the district court erred in admitting evidence regarding the February 2019 vehicle stop, any such error was harmless based on the record as a whole.  *See United States v. Felder*, 993 F.3d 57, 71 (2d Cir. 2021).  The evidence of Williams-Dorsey's prior involvement on one occasion in transporting individuals after they illegally entered the United States was extremely limited and constituted an insubstantial part of the government's overall proof at trial and its arguments to the jury in summation.  Therefore, especially in light of the overwhelming evidence against Williams-Dorsey, we "can conclude with fair assurance that the evidence did not substantially influence the jury." *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011) (internal quotation marks and citation omitted).

Accordingly, the admission of the prior acts provides no basis for reversal of the convictions.[12]

*        *        *

We have considered Williams-Dorsey's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.[13]

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

[12]  We also reject Williams-Dorsey's contention that the prosecutor made any improper arguments with respect to the Rule 404(b) evidence in the opening statement or summation.  The prosecutor's statements and arguments regarding the evidence were not improper in light of the trial record and the district court's ruling regarding admission of the Rule 404(b) evidence.  *See generally Zackson*, 12 F.3d at 1183 ("The government has broad latitude in the inferences it may reasonably suggest to the jury during summation." (internal quotation marks and citation omitted)).

[13]  In light of our affirmance of the conviction, Williams-Dorsey's request that the case be transferred to a different district judge on remand is denied as moot.